# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOSE URENA, an individual, on behalf of himself and others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>CENTRAL CALIFORNIA ALMOND GROWERS ASSN. and DOES 1-10.,<br><br>Defendants. | Case No. 1:18-cv-00517-LJO-EPG<br><br>ORDER GRANTING PLAINTIFF'S MOTION TO COMPEL PRODUCTION OF CLASS LIST<br><br>(ECF NO. 23) |

Plaintiff Jose Urena, individually and on behalf of others similarly situated, brings the instant class action suit against Defendant Central California Almond Growers Association, asserting a variety of causes of action under California and Federal Law generally concerning wages and meal and rest periods. In the instant motion to compel, Plaintiff seeks the contact information for the entire putative class of approximately 286 members, including those who have signed an arbitration agreement. For the reasons set forth herein, Plaintiff's Motion to Compel is GRANTED.

**I.    BACKGROUND**

Plaintiff, on behalf of himself and others similarly situated, filed this wage and hour class

1

action on April 13, 2018 alleging that Defendant, Central California Almond Growers Association failed to provide required meal and rest periods (Cal. Lab. Code §§ 226.7 and 512), failed to maintain records of meal periods (Cal. IWC Wage Order 8-2001 and Cal. Lab. Code § 1199), failed to issue accurate itemized wage statements (Cal. Lab. Code § 226), failed to properly compensate for all hours worked (Cal. Lab. Code §§ 510, 1194, and 1194.2), failed to pay all wages due at the end of employment (Cal. Lab. Code §203), and engaged in unlawful and unfair business practices in violation of the California Labor Code and applicable IWC Wage Orders, and that such alleged actions also violate the Migrant and Seasonal Agricultural Worker protection Act ("MSWPA"), 29 U.S.C. §§ 1801-1872. (ECF No. 2.) On August 6, 2018, Plaintiff amended his complaint adding a derivative claim under California's Private Attorneys General Act ("PAGA"), Cal. Lab. Code §§ 2699, et seq. (ECF No. 10) The putative class includes non-exempt hourly agricultural employees of Defendant from April 13, 2018, until the present.

At issue in the instant discovery dispute is Plaintiff's Interrogatory Number 2, which instructs Defendant to:

> Identify each and every putative class member employed by you during the relevant time period.

(ECF No. 25-1. p. 9).[1] On December 21, 2018, Defendant served objections to interrogatory number 2, which provided, in pertinent part, that:

> Defendant has agreed to provide certain information, including a sampling of payroll records and time keeping records in advance of the mediation while redacting names and contact information subject to an appropriate tracking number. Defendant agrees to meet and confer with Plaintiff to engage in a *Bel-Aire* notice process regarding the disclosure of non-parties' identities.

(ECF No. 25-2, p. 5). Defendant now contends that it should only be required to produce the names and last known contact information for proposed class members who did *not* sign arbitration agreements. Defendant has apparently agreed to produce the contact information for putative class members who have not signed arbitration agreements. (ECF No. 26, n.1)

On April 4, 2019, the Court held an informal discovery dispute conference with the parties

---

[1] The interrogatory defines "identify" to include the employee's name and contact information.

and gave Plaintiff permission to file a motion to compel regarding the production of the putative class list. (ECF No. 22) On May 3, 2019, Plaintiff filed the instant motion to compel the putative class list. (ECF No. 23) Defendant filed an opposition on May 10, 2019; Plaintiff filed a reply on May 17, 2019. (ECF Nos. 24, 26) The Court heard oral argument on May 24, 2019.

## II. LAW AND ANALYSIS

### a. Discovery Generally

Federal Rule of Civil Procedure 26(b)(1) provides that parties:

> May obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.

Fed. R. Civ. Pro. 26(b)(1). "The party seeking to compel discovery has the burden of establishing that its request satisfies the relevancy requirements of Rule 26(b)(1). Thereafter, the party opposing discovery has the burden of showing that the discovery should be prohibited, and the burden of clarifying, explaining or supporting its objections." *Bryant v. Ochoa*, No. 07cv200 JM (PCL), 2009 WL 1390794 at *1 (S.D. Cal. May 14, 2009) (further citations omitted).

### b. Discovery in the Class Action Context

As for discovery in the class certification context, "[w]hether or not discovery will be permitted…lies within the sound discretion of the trial court." *Kamm v. Cal. City Dev. Co.*, 509 F.2d 205, 209 (9th Cir. 1975). Although a party seeking class certification is not always entitled to discovery on the class certification issue, "[t]he propriety of a class action cannot be determined in some cases without discovery." *Id.* at 210. "[T]he better and more advisable practice for a District Court to follow is to afford the litigants an opportunity to present evidence as to whether a class action was maintainable." *Doninger v. Pac. Nw. Bell, Inc.*, 564 F.2d 1304, 1313 (9th Cir. 1977). Ninth Circuit case law "stand[s] for the unremarkable proposition that often the pleadings alone will not resolve the question of class certification and that some discovery may be warranted." *Vinole v. Countrywide Home Loans, Inc.*, 571 F.3d 935, 942 (9th Cir. 2009).

A court does not abuse its discretion in refusing to authorize pre-certification discovery when the plaintiff fails to advance a *prima facie* showing that the class requirements are satisfied or that discovery is likely to produce substantiation of class allegations. *Mantolete v. Bolger*, 767 F.2d 1416, 1424 (9th Cir. 1985). A court is not required, however, to find a *prima facie* showing under Rule 23 prior to authorizing pre-certification discovery. *See Kaminske v. JP Chase Bank N.A.*, No. SACV 09-00918 JVS (RNBx), 2010 WL 5782995 at *2 (C.D. Cal. May 21, 2010) ("Indeed, Plaintiffs are not necessarily required to make a prima facie showing [under Rule 23] in order to obtain information for the putative class.").

Finally, "[t]he Supreme Court has recognized the importance of permitting class counsel to communicate with potential class members for the purpose of gathering information, even prior to class certification." *Guzman v. Chipotle Mexican Grill, Inc.*, No. 17-cv-02606, 2018 WL 6092730 at *2 (N.D. Cal. Nov. 21, 2018) (citing *Gulf Oil Co. v. Bernard*, 452 U.S. 89, 102-03 (1981)); *Vinole*, 571 F.3d at 942); *Doninger*, 564 F.2d at 1313)). Concerning the contact information of the putative class members, district courts in this Circuit have often found that "[a]s a general rule, before class certification has taken place, all parties are entitled to equal access to persons who potentially have an interest in or relevant knowledge of the subject of the action, but who are not yet parties." *Wigele v. FedEx Ground Package Sys.*, No. 06-CV-01330-JM (POR), 2007 WL 628041, at *2 (S.D. Cal. Feb. 8, 2007) (quoting *Koo v. Rubio's Restaurants, Inc.*, (2003) 109 Cal.App.4th 719, 729. For that reason, discovery of the putative class members' contact information is routinely allowed. *See, e.g., Artis v. Deere & Co.*, 276 F.R.D. 348, 352 (N.D. Cal. 2011) ("The disclosure of names, addresses, and telephone numbers is a common practice in the class action context."); *Putman v. Eli Lilly & Co.*, 508 F.Supp.2d 812, 814 (C.D. Ca. 2007) ("[I]t seems to the Court that contact with [class members] could well be useful to the plaintiff to determine, at minimum, the commonality and typically prongs of Rule 23.").

### c. Rule 23 Requirements and Standing Generally

Defendants primarily argue that Plaintiff cannot make a *prima facie* showing under Rule 23, therefore rendering discovery as to the potential class improper. The impetus for Defendant's argument is that Plaintiff, unlike many members of the proposed class, did not sign an arbitration

agreement. Accordingly, Plaintiff's claims are not typical of the putative class members who signed arbitration agreements; nor is he an adequate representative of the class, as those who signed the arbitration agreement might have unique defenses that Plaintiff would be unable to argue on their behalf. Defendants contend that, because Plaintiff did not sign an arbitration agreement, he lacks standing to challenge the enforceability of such an agreement, rendering proposed discovery about the viability of the arbitration agreements at issue irrelevant.

Class certification is governed by Federal Rule of Civil Procedure 23. Under Rule 23(a), the party seeking certification must demonstrate, first, that:

(1) The class is so numerous that joinder of all members is impracticable;

(2) There are questions of law or fact common to the class;

(3) The claims or defenses of the representative parties are typical of the class; and

(4) The representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. Pro. 23(a). Second, the proposed class must satisfy at least one of the three requirements listed in Rule 23(b), which allows for class certification if (1) there is a risk of substantial prejudice from separate actions; (2) declaratory or injunctive relief benefitting the class as a whole would be appropriate; or (3) that common questions of fact or law predominate, and the class action is superior to other available methods of adjudication. *See* Fed. R. Civ. Pro. 23(b).

As for typicality, Rule 23(a)(3) requires that "the [legal] claims or defenses of the representative parties [be] typical of the claims or defenses of the class." Fed. R. Civ. Pro. 23(a)(3). Typicality refers to the nature of the claim or defense of the class representative and not on facts surrounding the claim or defense. *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992). "The test of typicality is whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct." *Evon v. Law Offices of*

*Sidney Mickell*, 688 F.3d 1015, 1030 (9th Cir. 2012) (internal quotation marks and citations omitted). The typicality requirement ensures that "the named plaintiff's claims and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence." *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 158 n. 13 (1982).

As for adequacy of representation, Rule 23(a)(4) imposes a closely related requirement to typicality: that the class representative will "fairly and adequately protect the interests of the class." Fed. R. Civ. Pro. 23(a)(4). To determine whether Plaintiffs will do so, the Court must ask: "(1) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" *Evon*, 68 F.3d at 1031 (quoting *Hanlon*, 150 F.3d at 1020).

### d. Typicality, adequacy of representation, and standing when the named plaintiff has not signed arbitration agreement

Defendants rely on multiple cases at the class certification stage that have held that when a named Plaintiff has opted out of a class action waiver or arbitration provision, his claims are not typical of a putative class consisting of members who did sign such agreements; these courts have also held that such a plaintiff would be an inadequate class representative.

The Ninth Circuit's unpublished decision in *Avilez v. Pinkerton Government Services, Inc.*, 596 Fed.Appx. 579 (9th Cir. 2015) is instructive. In that case, the named plaintiff's arbitration agreement did not contain a class action waiver, but the district court nevertheless certified classes and subclasses that included employees who had signed class action waivers. *Id.* at 579. The Ninth Circuit held that the district court abused its discretion in certifying those classes and subclasses because "those who signed such waivers have potential defenses that [the named plaintiff] would be unable to argue on their behalf." *Id.* Thus, the Ninth Circuit concluded, the named plaintiff was "not an adequate representative, Fed. R. Civ. P. 23(a)(4), and her claim lack[ed] typicality, Fed. R. Civ. P. 23(a)(3)." *Id.* Other courts have similarly found typicality and adequacy of representation to be lacking where the lead plaintiff was not subject to the same arbitration provisions as unnamed plaintiffs. *See, e.g, Tschudy v. J.C. Penny Corp. Inc.*, No. 11CV1011 JM (KSC), 2015 WL 8484530 at *3 (S.D. Cal. Dec. 9, 2015) (finding that named

plaintiffs, who were not subject to arbitration agreement, failed to satisfy typicality and adequacy requirements where putative class members had arbitration provisions); *Quinlan v. Macy's Corp. Servs. Inc.*, No. CV1200737DDPJCX, 2013 WL 11091572, at *3 (C.D. Cal. Aug. 22, 2013) (finding typicality requirement not satisfied where the plaintiff "asserts claims that the overwhelming majority of purported class members may be barred from bringing in this court" because over 90% of proposed class, but not lead plaintiff, was subject to arbitration agreement).

Regarding Defendant's argument that Plaintiff cannot make a *prima facie* showing that class certification is appropriate under Rule 23, without deciding the issue, the Court notes that such a showing is not necessarily required before authorizing pre-certification discovery. *See Kaminske*, No. SACV 09-00918 JVS (RNBx), 2010 WL 5782995 at *2.

As for standing, courts considering the issue hold that a plaintiff not subject to an arbitration agreement lacks standing to challenge the applicability or enforceability of the arbitration provisions. *See, e.g., Tan v. Grubhub, Inc.*, No. 15-CV-05128-JSC, 2016 WL 721439, at *6 (N.D. Cal, July 19, 2016); *Meyer v. T-Mobile USA Inc.*, 836 F.Supp.2d 994, 1003 (N.D. Apr. 11, 2011) (finding the plaintiff did not have standing to challenge the change-in-terms provision because it has never been applied to her.); *In re Checking Account Overdraft Litig.*, 780 F.3d 1031, 1039 (11th Cir. 2015) (finding that where named plaintiffs were not subject to arbitration, they lacked standing to assert any rights the unnamed putative class members might have to preclude the defendant from moving to compel arbitration because the named plaintiffs have no cognizable stake in the outcome of that question).

However, the Ninth Circuit has not issued a published case addressing whether a plaintiff who does not sign an arbitration agreement has standing to challenge the agreement in a class action proceeding. The cases cited above all concern class certification—not discovery. Defendant has not pointed to any case limiting discovery before class certification to putative class members who are not parties to an arbitration agreement.

Multiple cases have held otherwise. For example, in *Adamov v. Pricewaterhouse Coopers LLP*, No. 2:13-cv-01222-TLN-AC, 2017 WL 6558133 (E.D. Cal. Dec. 22, 2017), the plaintiff filed a wage-and-hour putative class action against his former employer. The plaintiff was not

party to an arbitration agreement, but nevertheless sought discovery concerning the identity and contact information of all pertinent employees, including those signing arbitration agreements. Defendant argued that the discovery was irrelevant because the plaintiff lacked standing to challenge the arbitration agreement. The Court was not persuaded by the standing argument, and allowed discovery of all putative class members:

> Unlike in *In re Checking Account*, where the district court was making a substantive ruling on the obligations of unnamed putative class members, plaintiff seeks discovery into the contact information of potential class members, including individuals who signed an arbitration agreement that may or may not ultimately prevent them from participating in the class. Defendant's own argument best presents the conundrum: "The validity/enforceability of [Defendant's] arbitration program cannot be adjudicated until after class certification proceedings, and only if the class includes individuals who are bound by arbitration agreements." Defendant is correct that the issue of whether individuals are bound by the arbitration agreement can be part of the class only arises if the class actually includes potentially bound members. The issue here is whether plaintiff is entitled to discovery that may lead to such individuals actually being included in the class. To prevent this discovery would amount to a premature decision on the issue of the arbitration agreement's applicability, by limiting plaintiff's ability to include potentially-bound individuals in the class.

*Id.* at 4; *see also See Sansone v. Charter Communications, Inc.*, No. 17-cv-01880-WQH-JLB, 2019 WL 460728 at *8-9 (S.D. Cal. Feb. 6, 2019).

### e. Plaintiff sets forth a colorable argument that the arbitration agreements are unenforceable

In considering whether discovery of all putative class members is appropriate, this Court looks to whether Plaintiff sets forth a colorable argument that the arbitration agreements are not enforceable and that the enforceability of the arbitration agreements will be in dispute during the class certification stage. Plaintiff claims that the class action waiver provisions of the pre-litigation arbitration agreements are subject to the four-part analysis outlined in *Gentry v. Superior Court*, 64 Cal.Rptr.3d 773 (2007). In *Gentry*, the court concluded that a party opposing enforcement of an express class action waiver clause must make a factual showing under a four-factor test, which requires the trial court to consider: (1) the modest size of the potential individual recovery; (2) the potential for retaliation against members of the class; (3) the fact that absent class members may be ill informed about their rights; and (4) other real world obstacles to

the vindication of class members' rights…through individual arbitration. *Gentry*, 64 Cal.Rptr.3d at 783-87.

Plaintiff then argues that the pre-litigation arbitration agreement class action waivers are unenforceable under *Gentry*. The putative class consists of low wage workers; the modest size of individual recovery would make it difficult for the individual class members to obtain competent representation to vindicate their interests in the absence of a class action. Thus, the first and fourth factors arguably weigh against enforcing the pre-litigation agreement. As discussed further on the record at oral argument, the Court finds that Plaintiff has made a colorable argument that the arbitration provisions are not enforceable. Again, the Court does not decide that the *Gentry* factors weigh in favor of striking the pre-litigation arbitration agreement, only that that Plaintiff makes a colorable argument against the agreement's enforceability.

The Court also finds that Plaintiff makes a colorable argument that the post-litigation agreements are impermissible: to the extent the post litigation arbitration agreements do not provide notice of the present suit or otherwise accurately apprise the putative class members of their rights in this suit, Plaintiff contends that they arguably amount to misleading/and or coercive communications to putative class members. *See McKee v. Audible*, *Inc.*, CV-17-1941-GW (Ex), 2018 WL 2422582 at *5-6 (C.D. Cal. Apr. 6, 2018).

And while Defendant references authority that post-litigation arbitration agreements may be valid when issued as part of a company's "standard practice…when hiring new employees," the Court does not read that case to say such agreements are always valid. *See Balasanyan v. Nordstrum, Inc.*, 294 F.R.D. 550, 573-74 (S.D. Cal. 2013) (finding that arbitration agreements at issue were enforceable when issued as part of the company's standard practice but not holding that this would always be the case). Without deciding the issue, the Court finds that Plaintiff makes a colorable argument that the post-litigation agreements are invalid.

Because the enforceability of the arbitration agreements is potentially at issue, the Court finds that the information concerning the identity and contact information of the putative class members—including those who have signed an arbitration agreement—is sufficiently relevant to be subject to discovery. *See Sansone*, No. 17-cv-01880-WQH-JLB, 2019 WL 460728 at *8-9.

(finding contact information of putative class members that had signed arbitration agreement relevant because "[b]y communicating with putative class members, Plaintiffs will be able to gather information related to the enforceability of the arbitration agreement, which may be an issue during the certification stage") (citing *Adamov*, 2017 WL 6558133 at *4). This holding accords with the general rule that before class certification has taken place, parties are entitled to equal access to persons who potentially have an interest in the subject of the action, but who are not yet parties. *See Wiegele*, 2007 WL 628041 at *2 (internal citations omitted); *see also Gulf Oil Co.*, 452 U.S. at 101-02.

As to the argument that, even if the agreements are unenforceable, Plaintiff lacks standing to challenge them, the Court acknowledges that the weight of authority supports Defendant's position—at least at the class certification stage. That said, the Ninth Circuit has not reached this issue in a published decision, and the district courts that have encountered the argument have refused to limit discovery on that basis. Moreover, at oral argument, Plaintiff's counsel provided at least some reasons to conclude otherwise.[2] In light of at least some legal uncertainty, the Court declines to limit discovery based on the prediction that Plaintiff will be found to lack standing to challenge the arbitration agreement later in this case.

The Court is also guided by its own limited role in this case. Chief District Judge Lawrence O'Neill is the presiding judge in this case. Absent consent (which has not been given), the undersigned Magistrate Judge will not be the one to decide class certification and the related legal issues. It is therefore reluctant to limit discovery in any way that precludes Plaintiff from making arguments at class certification before the District Judge.

Discovery as to the contact information for the entire putative class is therefore appropriate.

### f. Proportionality

Finally, Defendant asks the Court to limit production to a sample of the putative class

---

[2] Plaintiff's counsel also indicated it would amend its Complaint to add a named Plaintiff who signed an arbitration agreement. *See* Recording of May 24, 2019 hearing, available to the Parties upon request.

(continued…)

members who signed the arbitration agreement. The Court is not persuaded that a sampling is appropriate because the putative class—at least 286 employees—is relatively small.[3] Indeed, courts routinely order samples that outnumber the likely size of the actual class in this matter.[4] *See, e.g., Harris v. Best Buy Stores, L.P.*, NO. 17-cv-446-HSG (KAW), 2017 WL 3948397, at *3-4 (N.D. Cal. Sept. 8, 2017) ("Given the large size of the putative class [10,000], the Court finds that the 500 employees previously offered by Defendant is appropriate."); *Guzman v. Chipotle Mexican Grill, Inc.*, No. 17-cv-02606-HSG (KAW), 2018 WL 6092730, at *3 (N.D. Cal. Nov. 21, 2018) ("Given the large size of the putative class [43,000], the Court finds that a sample of 2,000 individuals is appropriate.").

### III. CONCLUSION

In sum, for the foregoing reasons, Plaintiff's Motion to Compel to Compel Production of Class List (ECF No. 23) is GRANTED. It is hereby ORDERED that Defendant must respond to Plaintiff's Interrogatory Number 2 with the identity and contact information of all putative class members from 2014 to 2019, whether or not those class members signed an arbitration agreement.

IT IS FURTHER ORDERED that, within fourteen days of the issuance of this Order, the Parties shall provide a proposed schedule for class certification.

IT IS SO ORDERED.

Dated: **June 5, 2019**             /s/ Erica P. Grosjean
                                    UNITED STATES MAGISTRATE JUDGE

---

[3] The 286 number comes from Defendant's responses to interrogatories. It does not include employees from 2014 and 2019. Plaintiff maintains that Defendants must also produce the contact information for employees from 2014 and 2019. The Court agrees that the contact information for employees from 4/13/2018 until 12/31/2018 is relevant, as is the contact information for class members in 2019.

[4] Again, the exact size of the class is unknown, as the 286 number does not account for the years 2014 and 2019. But assuming the number of employees in any given year remains constant and does not dramatically fluctuate, the 286 figure is likely close to the actual class total.