**KINGSLEY & KINGSLEY, APC**
ERIC B. KINGSLEY, Esq., Cal. Bar No. 185123
eric@kingsleykingsley.com
KELSEY M. SZAMET, Esq., Cal. Bar No. 260264
kelsey@kingsleykingsley.com
16133 Ventura Blvd., Suite 1200
Encino, CA 91436
Telephone: (818) 990-8300
Fax: (818) 990-2903

**DAVTYAN LAW FIRM, INC.**
EMIL DAVTYAN, Esq. SBN-299363
emil@davtyanlaw.com
880 E. Broadway
Glendale, CA 91205
(818) 875-2008, Fax (818) 722-3974

Attorneys for Plaintiff and the Proposed Class

# UNITED STATES DISTRICT COURT

# FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOSE URENA, an individual, on behalf of himself and others similarly situated,<br><br>PLAINTIFF,<br><br>v.<br><br>CENTRAL CALIFORNIA ALMOND GROWERS ASSN.; and DOES 1-10,<br><br>DEFENDANTS. | CASE NO. 1:18-CV-00517-LJO-EPG<br><br>District Judge: Lawrence J. O'Neill<br>Magistrate Judge: Erica P. Grosjean<br><br>**DECLARATION OF KELSEY M. SZAMET IN SUPPORT OF PLAINTIFF'S MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**<br><br>*[Filed concurrently with Motion for Preliminary Approval of Class Action Settlement and [Proposed] Order Thereon]*<br><br>Date: May 29, 2020<br>Time: 10:00 a.m.<br>Dept.: 10 |

**DECLARATION OF KELSEY M. SZAMET IN SUPPORT OF PLAINTIFF'S MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**

# DECLARATION OF KELSEY M. SZAMET

I, Kelsey M. Szamet, state and declare as follows:

1. I am an attorney admitted before all courts of the State of California and a partner in the law firm of Kingsley & Kingsley, APC, counsel of record for Plaintiffs in this action. I am completely familiar with the present litigation, including the pleadings, discovery, and filings submitted in this matter. I make this Declaration from my own personal knowledge, and, if called upon, I could and would competently testify to the following.

2. I graduated cum laude from the University of California, San Diego in 2004 with a degree in Human Development. I graduated from the University of California, Los Angeles School of Law in 2008. I am admitted to practice before the following Courts: United States Supreme Court; United States District Court, Northern, Eastern, Southern and Central of California; all California State Courts.

3. I make this Declaration is support of Plaintiffs' Motion for Preliminary Approval of the Class Action Settlement in the above-captioned case.

## RELEVANT PROCEDURAL HISTORY

4. The Parties engaged in extensive formal discovery including written interrogatories, requests for production of documents, and depositions. Through discovery, Defendant produced various pertinent documents including: applicable pay, meal period, and rest break policies for the class period, as well as a sampling of time and pay records for Class Members. The Parties engaged in extensive discussions about their respective positions and the information and data needed to properly evaluate the merits of the claims alleged.

5. The Parties attended private mediation on January 29, 2019, with the Hon. Howard Broadman (Ret.), but were unable to reach a settlement at that time.

6. The Parties engaged in more months of discovery and conducted depositions, including Defendant's Persons Most Qualified on April 26, 2019, and Plaintiff on June 12, 2019.

7. After subsequent arms-length discussions aided by Judge Broadman, the Parties reached a proposed class action settlement. The proposed settlement was memorialized and executed in long-form on February 12, 2020, now submitted to this Court for preliminary approval.

8. The Settlement Class, which includes approximately 370 individuals, is defined as:

> All who are employed or have been employed by Defendant, in the State of California, and who have worked one or more shifts as a non-exempt hourly agricultural employee, as defined by the California Labor Code, Industrial Welfare Commission Wage Order 8-2001, and 29 U.S.C. §1892(3) from April 13, 2014 through April 30, 2019.

## **SETTLEMENT'S KEY PROVISIONS**

9. If the Court approves the Settlement, the following reflect the allocation of the Maximum Settlement Fund: $204,308.55 for estimated settlement funds to the Settlement Class (the "Net Settlement Amount" or "NSA"); $10,441.45 for Settlement Administration costs; $5,000.00 for a representative enhancement to Plaintiff; $125,000.00 for attorneys' fees and $19,000.00 in litigation costs (together the "Class Counsel Award"); and $15,000.00 for PAGA Payment [75% ($11,250.00) to the LWDA and 25% ($3,750.00) to remain in the NSA).

10. As of the date of this filing, Plaintiff's Counsel has $16,841.28 in costs. Counsel requests reimbursement of up to $19,000 at this time, but will limit the request to actually incurred costs at the time of filing the Motion for Final Approval.

11. Defendant represents that there are 370 Settlement Class Members.

12. This is a non-reversionary, total payout Settlement.

13. The Parties met and conferred regarding a third-party settlement administrator to administer the Settlement claims process. The Parties agreed to use ILYM Group, Inc., who submitted a bid for $10,441.45.

14. Given the size of the class, the price for the class administration is cost-effective and reasonable.

**DECLARATION OF KELSEY M. SZAMET IN SUPPORT OF PLAINTIFF'S MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**

## CLASS CERTIFICATION ANALYSIS

15. To facilitate the Settlement, the Parties respectfully ask the Court to conditionally certify the following proposed class under FRCP 23(b)(3):

> all who are employed or have been employed by Defendant, in the State of California, and who have worked one or more shifts as a non-exempt hourly agricultural employee, as defined by the California Labor Code, Industrial Welfare Commission Wage Order 8-2001, and 29 U.S.C. §1892(3) from April 13, 2014 through April 30, 2019.

16. The Parties agree, but only for purposes of the Settlement, the criteria for certifying a settlement class are satisfied.

17. Here, approximately 370 individuals comprise the Settlement Class, easily satisfying numerosity.

18. Here, Plaintiff contends that there are questions of law and fact common to the Settlement Class between April 13, 2014 and April 30, 2019. These common questions include: 1) Whether Defendant failed to provide lawfully required meal periods and/or failed to compensate employees one (1) hour's wages in lieu thereof; 2) Whether Defendant failed to keep records of meal periods; 3) Whether Defendant failed to provide lawfully required rest periods and/or failed to compensate employees one (1) hour's wages in lieu thereof; 4) Whether Defendant failed to provide accurate itemized wage statements; 5) Whether Defendant failed to pay proper wages, overtime, and/or double-time; 6) Whether Defendants failed to timely pay compensation due and owning upon separation of employment; 7) Whether Defendant violated Business and Professions Code section 17200 by engaging in the acts previously alleged; 8) Whether Defendant violated the MSWPA by failing to pay proper wages due, by failing to honor the working arrangements regarding meal and rest breaks, and by failing to accurately record the number of hours worked, the total pay period earnings, and the net pay; and 9) whether Defendant is liable for PAGA penalties by engaging in the acts previously alleged.

19. Plaintiff alleges that Defendant maintained handbooks with uniform

meal and rest policies, had a common auto-deduct policy regarding meal breaks, as well as engaged in a common practice of rounding and denying meal and rest breaks. Plaintiff maintains that the policies in the handbook do not comply with California law and the presence of a company-wide meal and rest policy suggests that Defendant applied the same policies to all employees, which would weigh in favor of class certification. Additionally, Plaintiff contends that Defendant issued wage statements that were inaccurate based on these common policies.

20. Plaintiff's challenge to Defendants' uniform policies and practices involves common factual and legal issues that are amenable to class treatment. Here, Plaintiff alleges that the proposed Settlement Class Members suffered the same injuries, in the same manner. Accordingly, for purposes of settlement, the evidence reviewed by Plaintiff's Counsel supports his contention that common wage, meal and rest policies applied to the proposed Settlement Class Members and certification for settlement purposes is appropriate. Based on these common factual and legal issues, Plaintiff submits that sufficient commonality exists.

21. Plaintiff worked for Defendant as an almond sheller/huller during the 2017 season from approximately August 16, 2017 to December 5, 2017 at Defendant's Kerman, California site.

22. Plaintiff and the class routinely worked shifts in excess of ten (10) hours.

23. Plaintiff maintains that he was regularly required to work without being provided: lawful meal and rest breaks, accurate itemized wage statements, all wages owed due to an auto-deduct policy, was regularly subject to Defendant's failure to accurately record meal periods, and was not paid all wages upon separation of employment.

24. Moreover, Counsel has reviewed Plaintiff's personnel file, time and pay records, and wage statements, and has personally talked with him on many occasions about the nature of his claims.

5

25. Plaintiff contends that his time and pay records show meal period violations consistent with the sample provided both in informal and formal discovery.

26. Thus, Plaintiff maintains that his claims are typical of those of the settlement class. For purposes of approving this Settlement, Defendant does not oppose Plaintiff's assertion that sufficient typicality exists.

27. Plaintiff and Class Counsel do not have interests antagonistic to those of the Settlement Class. To the contrary, Plaintiff shares the same interest—*i.e.*, recovering damages resulting from alleged violations of Defendant's legal obligations.

28. Moreover, Class Counsel have extensive experience prosecuting similar such class actions. Kingsley & Kingsley is experienced in prosecuting employment and consumer matters, and the firm has focused its practice since 2000 on complex litigation including wage and hour class actions. (*Id.*) Kingsley & Kingsley currently serves as class counsel for dozens of pending class action lawsuits in Northern, Eastern, Central, and Southern California. Below is a representative sampling of those cases:

    a. *Ryan v. Hilton Hotels Corporation,* Los Angeles County Superior Court (BC364260). The matter was approved for final settlement by the Honorable Mary Thornton House in March 2008, in the gross amount of $1,675,000.00, with attorneys' fees request of 33 1/3%.

    b. *Benitez v. GRA-GAR LLC,* San Bernardino County Superior Court (CIVSS709965). The matter was approved for final settlement by the Honorable W. Robert Fawke in February 2009, in the gross amount of $250,000.00, with attorneys' fees request of 33 1/3%.

    c. *Rollins v. Big Wangs, Inc.,* Los Angeles County Superior Court (BC393775). The matter was approved for final settlement by the Honorable Malcolm H. Mackey in October 2009, in the gross amount of $195,000.00, with attorneys' fees request of 33 1/3%.

**DECLARATION OF KELSEY M. SZAMET IN SUPPORT OF PLAINTIFF'S MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**

d. *Sevier v. Excalibur Well Service,* Kern County Superior (S-1500-CV-265391-WDP). Preliminary approval of settlement was granted March 10, 2010 by Honorable William D. Palmer. The matter was approved for final settlement in May 2010, in the gross amount of $550,000.00, with attorneys' fees request of 33 1/3%.

e. *Lewis v. Collabrus, Inc., et al.*, Santa Clara County Superior Court (109CV-142927). The matter was approved for final settlement by the Honorable James P. Kleinberg in March 2012, in the gross amount of $2,000,000.00, with attorneys' fees request of 33.3%.

f. *Hirschinger v. Blue Cross of California*, Los Angeles Superior Court (BC402739). The matter was approved for final settlement by the Honorable Lee Smally Edmund in June 2013, in the gross amount of $4,700,000.00, with attorney's fees request of 38%.

g. *Perry v. GSF Properties*, Fresno County Superior Court (11CECG02434MWS). The matter was approved for final settlement by the Honorable Mark W. Snauffer in October 2013, in the gross amount of $700,000.00, with attorney's fees request of 33.33%.

h. *Anderson v. Total Renal Care, Inc.*, Los Angeles County Superior Court (BC388335). The matter was finally approved for final settlement by the Honorable William F. Highberger in January 2014, in the gross amount of $1,500,000, with attorney's fees request of 33.33%.

i. *Randell v. Tuesday Morning, Inc.*, Los Angeles Superior Court (BC403298). The matter was finally approved for final settlement by the Honorable Richard E. Rico in October 2014, in the gross amount of $899,000.00, with attorney's fees request of 33.33%.

j. *Westbrook v. International Surfacing Systems*, Alameda Superior Court (RG10510015). This certified class action was approved for final

settlement by the Hon. Wynne Carvill in August 2015, in the gross amount of $995,000.00, with attorney's fees request of 33.33%.

    k. *Rojas, et al. v. Sunview Vineyards of California, Inc.,* Eastern District (1:09-cv-00705 AWIJLT). This certified class action was approved for final settlement by the Honorable Anthony W. Ishii in October 2015, in the gross amount of $4,550,000.00, with attorneys' fees approved in the amount of $1,137,500.00.

    l. *Munoz, et al. v. Giumarra Vineyards Corporation*, United States District Court for the Eastern District of California (Case No.: 1:09-cv-00703 - AWI – JLT). The matter was approved for final settlement by the Honorable Anthony W. Ishii in November 2017, in the gross amount of $6,100,000.00, plus interest, with attorney's fees benchmark award of $1,525,000.

    m. *Pineda, et al. v. Grimmway Enterprises, Inc.*, Kern County Superior Court (BCV-15-101333). The matter was approved for final settlement before the Hon. Stephen D. Schuett, Dept. 10, in January 2018, in the gross amount of $9,000,000 with attorneys' fees request of 33.33%.

29. Kingsley & Kingsley filed its first motion for class certification in the year 2000 and since that time has been appointed class counsel on dozens of wage and hour class actions that have been approved for class certification. Since 2011, Kingsley & Kingsley has moved for class certification in 15 matters and has successfully obtained class certification in 14 of those cases. A brief sampling of which includes:

    a. *Lewis v. Collabrus, Inc.*, Santa Clara County Superior Court (109CV-142927), approved for Class Certification in 2011.

    b. *Hirschinger v. Blue Cross of California*, Los Angeles Superior Court (BC402739), contested Class Certification approved in 2012.

**DECLARATION OF KELSEY M. SZAMET IN SUPPORT OF PLAINTIFF'S MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**

c. *Randell v. Tuesday Morning, Inc.*, Los Angeles Superior Court (BC403298), contested Class Certification approved in 2012.

d. *Munoz, et al. v. Giumarra Vineyards Corporation*, Eastern District (1:09-cv-00703 AWI-JLT). The Hon. Jennifer Thurston granted partial class certification and appointed Kingsley & Kingsley as co-lead class counsel in 2012.

e. *Melendrez v. JK Communications*, Los Angeles Superior Court (BC497692). The Hon. John Shepard Wiley, Jr. certified five classes and appointed Kingsley & Kingsley as class counsel in 2015.

f. *Suarez v. Mazatlan, Inc.*, San Diego County Superior Court (37-2015-00002978-CU-OE-CTL) approved for Class Certification in 2016.

g. *Amaro, et al v. Gerawan Farming, Inc.*, United States District Court for the Eastern District of California (1:14-cv-00147-DAD-SAB), contested Class Certification approved in 2016.

h. *Ruiz v. Daniel C. Salas Harvesting, Inc.*, Kings County Superior Court (16 C 0214), contested class certification approved in 2018.

i. *Weldon v. Geo Corrections & Detentions, LLC*, Kern County Superior Court (BCV-16-102833), contested class certification approved in 2018.

30. Thus, Plaintiff and Class Counsel are adequate representatives for the Class. The firm has diligently and aggressively pursued this Action. Class Counsel believes that the proposed settlement is fair and reasonable.

31. Plaintiff's claim is based on factual and legal questions about Defendant's policies and practices that are not only common to the Settlement Class, but predominate under FRCP 23(e).

32. These aspects of the case strongly support a finding that the predominance requirement is satisfied.

33. For purposes of Settlement approval, the Parties submit superiority is

**DECLARATION OF KELSEY M. SZAMET IN SUPPORT OF PLAINTIFF'S MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**

satisfied.

## ANALYSIS OF SETTLEMENT

34. Neither Plaintiff nor his counsel has any conflicts of interest with any of the proposed class members.

35. Class Counsel has extensive experience in prosecuting wage and hour class actions throughout California.

36. It was very difficult for the Parties to reach this settlement. This settlement is the result of months of adversarial, non-collusive, and arms-length negotiations aided by an experienced mediator that took into account all relevant factors, present and potential.

37. The Parties were represented by experienced class action counsel throughout the negotiations. Class counsel regularly litigates wage and hour class actions, and have considerable experience settling such actions. Defendant concluded that this action may be settled in the manner and on the terms and conditions in the Settlement to avoid the expense of further legal proceedings.

38. The Parties arrived at this settlement only after formal discovery, depositions, conducting extensive investigation and discussion, and a careful evaluation of the law, risks, and all information substantiating the amount of damages reasonably likely to be awarded to the Class were the trier of fact to find Defendant was liable.

39. At mediation, Class Counsel determined Plaintiff's maximum potential recovery at trial for all claims to be $29,611,809.00. A substantial amount of that damage total was for waiting time penalties for four years, totaling $24,668,810.00. If the waiting time penalties were reduced to one year, the damages exposure total would be approximately $11,000,000.00.

40. At the time of settlement, Class Counsel applied discounts based upon the risks discussed herein. Class Counsel believes that the proposed Maximum Settlement Fund of $375,000.00 is fair and reasonable.

41. Defendant and its counsel also agree the Settlement is fair and in the best interest of the class members.

42. There is risk associated with continued litigation, including the prospect that a class might not be certified, or a certified class may be significantly smaller than proposed.

43. In the Action, of particular importance to determining the reasonableness of the Settlement are the significant liability questions regarding purported violations after July 2, 2018, when Defendant revised its meal and rest policies.

44. Here, Plaintiff alleges that Defendant failed to maintain accurate written meal and rest policies before July 2, 2018.

45. Additionally, the meal break policy failed to state that second meal periods must be taken before the completion of the 10th hour of work, important here as the Class often worked shifts over ten hours, or that Defendant would pay meal period premiums for non-compliant meal breaks.

46. The rest break policy did not say that the rest periods must be uninterrupted and that Class Members would be relieved of all work duties during the break.

47. Defendant revised its policies about July 2, 2018. Plaintiff asserts, which Defendant contests, that Defendant's revised meal policy is still flawed, as it still fails to state when second meal periods must commence. Furthermore, Plaintiff maintains that the sample time data provided had no punch data for meal periods and that Defendant had an unlawful auto-deduct policy for meal breaks, which deprived Class Members of earning their lawful wages and overtime, as Class Members were routinely not provided with 30-minute uninterrupted meal breaks nor any second meal periods. Plaintiff also asserts that Defendant maintained an unlawful rounding policy.

48. Relying upon this allegedly unlawful policy, Plaintiff maintains that

**DECLARATION OF KELSEY M. SZAMET IN SUPPORT OF PLAINTIFF'S MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**

at trial he would present evidence that under Defendant's uniform practice, the Class Members were not provided with an opportunity or given authorization to take timely meal breaks as required by California law. While Plaintiff was confident that certification of the meal period class was appropriate, at the same time, it cannot be ignored that there are significant risks associated with moving forward and attempting to certify the meal period claim. Most importantly, Plaintiff has to acknowledge that the Court might find that Defendant did in fact maintain an accurate written meal period policy, particularly after July 2, 2018. Plaintiff's main argument that the policy after July 2, 2018 is flawed is that it did not specify the timing of when the second meal period is to be taken. However, the Court might not find that this is required for the policy to be valid. In addition, there was risk that at certification (and trial), Defendant would introduce evidence that employees were properly advised of the timing of meal periods during the Class period. In fact, Defendant produced multiple declarations from employees stating that they take their meal and rest breaks every day. One declarant also stated that he was free to leave the company premises for breaks.

49. In fact, Defendant produced multiple declarations from employees stating that they take their meal and rest breaks every day. One declarant also stated that he was free to leave the company premises for breaks. With this analysis in mind, there is significant risk that the Court could have determined that the written meal period policy does comply with California law and that the Court would attribute great weight to the declarations, which would certainly lower the likelihood of certifying a meal period class. The extent to which Defendant actually "provided" employees with lawful breaks would be highly disputed were the case to have continued, and a substantial discount from the maximum settlement value of this claim was required.

50. Here, Plaintiff maintains that Class Members consistently worked shifts of at least three-and-a-half (3.5) hours and were not authorized or permitted

**DECLARATION OF KELSEY M. SZAMET IN SUPPORT OF PLAINTIFF'S MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**

to take rest breaks in accordance with California law up until July 2, 2018. Plaintiff asserts Defendant's policies were adopted in practice as Plaintiff and the Class were discouraged from taking their rest breaks, and required to work through their breaks. Plaintiff believes that Defendant did not have a compliant policy for much of the liability period, as it did not state rest breaks are uninterrupted, during which employees are relieved of all duties, and it restricted where breaks may occur. Consequently, Because of Defendant's flawed written policy, Plaintiff maintains that Defendant failed to make fractional rest breaks available to Class Members.

51. Plaintiff assessed a lower risk of certification to this rest break claim compared to the meal break claim.

52. Unlike the meal period claim, there was no time data to analyze to determine the rest period violation rate. Instead, because Plaintiff was asserting that Defendant maintained an unlawful policy until July 2, 2018, Plaintiff maintained that each and every fractional shift until then, as extrapolated from the sample time data Defendant produced, triggered a rest period violation. While Plaintiff's Counsel was confident regarding certification of the rest period claim, they discounted this claim to account for the risk of certification and trial and the possibility of Defendant proving a lower violation rate by way of its declarations obtained from class members.

53. Here, however, Plaintiff asserts Defendant's rounding policy consistently favored underpayment. As discussed above, Plaintiff alleges Defendant auto-deducted 30 minutes for first meal breaks from employees' time worked, which deprived Class Members all wages and overtime owed because they routinely did not take a timely 30-minute meal break. In assessing the unpaid wages claims for settlement, Plaintiff recognizes that there was risk at certification (and trial) of this claim, particularly as a significant portion of the claim relied on the meal break claim.

54. Also, as mentioned above, Defendant produced declarations wherein

**DECLARATION OF KELSEY M. SZAMET IN SUPPORT OF PLAINTIFF'S MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**

employees attested to receiving full 30-minute breaks. Additionally, there is risk the Court could have determined that the rounding policy was lawful. Given the risks of the meal break claim are compounded in the unpaid wages claim, the likelihood that Plaintiff would have been able to certify an unpaid wages class was low, and so a substantial discount from the maximum settlement value of this claim was required.

55. Plaintiff alleged Defendant failed to provide accurate itemized wage statements showing total hours worked and applicable hourly rates, in violation of Labor Code section 226(a).

56. Plaintiff also alleged violation of the MSWPA, 29 U.S.C. §§ 1831(c) and 1832, based on the previous allegations, as well as Defendant's engagement in unfair, unlawful, and fraudulent business practices.

57. Lastly, Plaintiff alleged penalties pursuant to PAGA, Labor Code § 2698, *et seq*.

58. There were risks associated with these claims. Plaintiff's basis, for the most part, for the waiting time penalties was that Defendant failed to pay premium payments owed to former employees who missed meal and/or rest breaks.

59. However, the Parties came to an agreement on settlement of the Action after this case and before review was granted. Given the ruling of *Naranjo* at the time of settlement, Class Counsel highly discounted the waiting time penalties claim, which was driving force behind the penalties damages.

60. Further, it was uncertain whether the Court would have agreed that Defendant attempted in good faith to pay employees all final wages owed upon their separation, therefore precluding a finding of willfulness necessary to obtain waiting time penalties.

61. The Court may have given weight to Defendant's declarations of employees who state that they received their paychecks, which provide the hours worked, on their last day of work. To the extent that Plaintiff's waiting time

**DECLARATION OF KELSEY M. SZAMET IN SUPPORT OF PLAINTIFF'S MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**

penalty claim is derivative of the meal and rest break claims, Plaintiff's Counsel had to consider these risks when discounting liability for this claim.

62. Because the wage statement penalties, AWPA penalties, and PAGA penalties, were also derivative of the other alleged claims, Class Counsel analyzed the risks of these claims by incorporating those previously assessed risks.

63. In light of the foregoing, Plaintiffs' counsel took into consideration, when valuing the merits of these claims, the chances of prevailing on the derivative causes of action, as well as the additional hurdles of prevailing in class certification and trial under each standalone cause of action in light of the defenses raised, and applied a heavy discount. Because of the uncertainty regarding liability and damages, Class Counsel finds the Maximum Settlement Fund of $375,000.00 to be a fair and reasonable settlement.

64. Furthermore, while Class Counsel believe Plaintiff's claims are meritorious, they are experienced class action litigators, and understand the outcome of class certification, trial, and any attendant appeals are inherently uncertain, as well as likely to consume many months or years.

65. This public policy favoring class action settlements applies with particular force here because the Settlement provides Class Members substantial, prompt, and efficient relief.

66. This case has not been certified to be tried as a class action.

67. Moreover, decertification is always a possibility.

68. A copy of the Parties' proposed class notice is attached to the Settlement as Exhibit 1. The Notice explains the claims in the Lawsuit, the essential terms of the settlement, that class members need to do nothing to recover under the Settlement, the procedures for requests to be excluded from the Settlement, and how to object to the Settlement. The Notice also advises the Settlement Class about the fairness hearing, Class Members' rights with respect to that hearing, and how to get more information about the Settlement. The Notice will also be translated in

**DECLARATION OF KELSEY M. SZAMET IN SUPPORT OF PLAINTIFF'S MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**

Spanish.

69. The time period for submitting an opt out request from the Settlement is reasonable, as is the time for filing objections; the Settlement Class will have adequate time to (1) digest the information provided in the Notice, and (2) obtain answers to questions about the Settlement.

70. ILYM Group, Inc. has significant experience in the administration of class action settlements and is qualified to perform all of the duties required of it in the Settlement.

71. The allocation of the Maximum Settlement Fund between members of the Settlement Class and Class Counsel is also fair because Class Counsel may seek to recover no more than one-third of the Maximum Settlement Fund in fees.

72. The requested fees are fair compensation for undertaking complex, risky, expensive, and time-consuming litigation solely on a contingency basis. Furthermore, the fee request is in line with other attorneys' fees awards for similar actions.

73. Class Counsel requests a fee award in the amount of $125,000.00, which represents 33.33% of the $375,000.00 common fund. Class Counsel's application for an award of attorneys' fees is reasonable and fair. This litigation resulted in the creation of a common fund for the Settlement Class, namely a non-reversionary settlement fund of $375,000.00. Because no Settlement Class Members will pay fees to Class Counsel for their efforts during the litigation, equity requires them to pay a fair and reasonable fee based on what the market would traditionally require, no less than if they had hired private counsel to litigate their cases individually. Class Counsel is therefore entitled to fees from the settlement fund as a whole.

74. A lodestar cross-check also confirms that the percentage requested is reasonable.

75. Class Counsel's attorneys' fees in the present case are broken down as

**DECLARATION OF KELSEY M. SZAMET IN SUPPORT OF PLAINTIFF'S MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**

follows:

|  | HOURS | HOURLY RATE | TOTALS |
|---|---|---|---|
| Eric B. Kingsley | 30 | $825 | $24,750.00 |
| Kelsey M. Szamet | 96.40 | $585 | $56,394.00 |
| David Keledjian | 51.50 | $385 | $19,827.50 |
| Justin M. Aufderhar | 166.6 | $325 | $54,145.00 |
| **TOTAL** | 344.50 |  | $155,116.50 |

76. Here, Class Counsel has already spent over 344.50 hours on this litigation, resulting in lodestar fees through the present of $155,116.50.

77. Using the above lodestar, the percentage of the fund requested represents a multiplier of approximately **.81**, which is well within the range of reasonable multipliers approved by courts within the Ninth Circuit. Comparison with the lodestar thus demonstrates that the requested fee award of $125,000.00 is reasonable.

78. Finally, Kingsley & Kingsley is experienced in prosecuting employment and consumer litigation, and the firm has focused its practice since the year 2000 on wage, hour, and working condition violations. They are well-versed in class action litigation and has diligently and aggressively pursued this action. Kingsley & Kingsley currently serves as class counsel for dozens of pending class action lawsuits in Northern, Central, and Southern California. Throughout the past decade, attorneys at Kingsley & Kingsley have also actively litigated countless wage and hour and consumer class actions.

79. For these reasons, Class Counsel requests the Court grant the requested fee award of $125,000.00.

80. The relief provided for in the Settlement will benefit all Participating Class Members fairly because the basis for recovery, compensable work weeks, is the same for each Participating Class Member. All individuals comprising the

Settlement Class are eligible to receive individual payments from the Net Settlement Amount, and will be bound by the same release.

81. Plaintiff provided invaluable assistance in the prosecution of this case.

82. Mr. Urena's time includes researching and identifying competent counsel with relevant expertise, providing information to Class Counsel regarding the claims at issue, compiling documents, conducting several meetings and telephone conferences with his attorneys to discuss the status of the case and the theories of liability, reviewing all relevant case documents, and having his deposition taken.

83. Moreover, Plaintiff incurred personal risk by bringing the Lawsuit; he could have been responsible for Defendant's costs, and his potential employment opportunities may have been impacted by his public prosecution of the Lawsuit.

84. The agreement to settle did not occur until Counsel possessed sufficient information to make an informed judgment regarding the likelihood of success on the merits and the results that could be obtained through further litigation.

85. There is no governmental participant in this action.

86. The Proposed Class Members have not yet been notified of the proposed Class Settlement, and thus there has yet to be a reaction from Class Members to the Proposed Settlement. After the Notice process, Plaintiff will inform the Court about the response of the Class.

///
///
///
///
///
///
///
///

## **EXHIBITS**

87. Attached hereto as Exhibit "A" is a true and correct copy of the fully-executed Stipulation of Class Action Settlement and Release of Claims ("Settlement Agreement" or "Settlement").

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

This declaration was executed this 3rd day of April, 2020, in Encino, California.

/s/ *Kelsey M. Szamet*
Kelsey M. Szamet