1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17

**IN THE UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF CALIFORNIA**

JOSE URENA, an individual, on behalf of himself and others similarly situated,

           Plaintiff,

      v.

CENTRAL CALIFORNIA ALMOND GROWERS ASSN., et al.,

           Defendants.

CASE NO. 1:18-cv-00517-NONE-EPG

FINDINGS AND RECOMMENDATIONS REGARDING MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

(ECF No. 37)

18
19
20
21

     Plaintiff Jose Urena ("Plaintiff") filed his Motion for Preliminary Approval of Class Action Settlement (ECF No. 37) on April 3, 2020. On May 29, 2020, the matter came before the Court for hearing. Plaintiff's counsel Kelsey Szamet and Defendants' counsel Paul Bauer telephonically appeared.

22
23
24
25
26
27

     The Court ordered the parties to brief two additional issues: compliance with California Labor Code § 2699(*l*)(2), (ECF No. 42), and Plaintiff's typicality and adequacy under Rule 23(a), given the specific nature of his employment, (ECF No. 43). On June 4, 2020, the parties filed a joint statement concerning their compliance with section 2699(*l*)(2). (ECF No. 44). On June 15, Plaintiff filed a supplemental brief and declarations concerning Plaintiff's typicality and adequacy. (ECF No. 45).

28

1   For the reasons set forth below, the Court recommends that Plaintiff's unopposed motion

2   for preliminary approval be granted, subject to the findings and recommendations set forth herein.

3   **I.      BACKGROUND**

4   Plaintiff filed his initial class action complaint on April 13, 2018. (ECF No. 3). He

5   amended it on August 13, 2018, alleging claims against Defendants Central California Almond

6   Growers Assn. ("CCAGA") and Does 1-10[1] under various provisions of the California Labor

7   Code, an Industrial Welfare Commission Wage Order, the Migrant and Seasonal Agricultural

8   Worker Protection Act, and the California Private Attorney General Act ("PAGA"). (ECF No.

9   15). Defendant CCAGA answered on August 27, 2018. (ECF No. 16).

10   After formal and informal discovery, at least two depositions, and several rounds of

11   mediation with Honorable Howard Broadman (ret.), the parties and their respective counsels

12   reached a proposed settlement of the class action. (ECF No. 37-1 ¶¶ 5-7).

13   **A.      Proposed Class**

14   The proposed class is composed of the following people:

15
16   all who are employed or have been employed by Defendant, in the State of
     California, and who have worked one or more shifts as a non-exempt hourly
     agricultural employee, as defined by the California Labor Code, Industrial
17   Welfare Commission Wage Order 8-2001, and 29 U.S.C. §1892(3) from April 13,
     2014 through April 30, 2019.
18
19   (ECF No. 37-2, at 5) (definition of "Settlement Class Members"). There are approximately 370

20   members of the proposed class. (ECF No. 37-1, ¶ 8).

21   **B.      Release**

22   The proposed settlement releases the following claims by the proposed class:

23   any and all claims, debts, liabilities, demands, obligations, penalties, guarantees,
     costs, expenses, damages, action or causes of action of whatever kind or nature,
24   contingent or accrued, that are alleged in the Action or that reasonable could have
     arisen out of the same facts alleged in the Action, including, but not limited to, all
25   claims related to the Migrant and Seasonal Agricultural Worker Protection Act.
     This Release shall include, without limitation, claims that were raised, or that
26   reasonably could have been raised, under the applicable Wage Order 8-2001 and
     California Labor Code provisions, including Labor Code §§203, 226.7, 510, 512,
27

28   ───────────────
     [1] Based on a review of the docket, the Doe defendants were never identified or served.

2

1194, and 1194.2 (collectively, the "Released Claims"). The period of the Released Claims shall extend through the Class Period [of April 13, 2014 through April 30, 2019]. The Parties agree that the judgment, and release of claims provided herein, shall have *res judicata* effect. The definition of Released Claims shall not be limited in any way by the possibility that Plaintiff or Class Members may discover new legal theories or legal arguments, based on the facts alleged in the Action, and not alleged in the operative pleadings in the Action but which might serve as an alternative basis for pursuing the same claims, causes of action, or legal theories of relief falling within the definition of Released Claims.

(ECF No. 37-2, at 4-5) (definition of "Released Claims"). The release covers CCAGA and various related people and entities. (*Id.* at 5).

### C.   Monetary Recovery

The maximum recovery under the settlement is $375,000. (ECF No. 37-2, at 12). The expected breakdown is as follows:

| | |
|---|---|
| Maximum Settlement Fund | $375,000 |
| Class Representative Enhancement | $5,000 |
| Class Counsel's Fees | $125,000 |
| Class Counsel's Costs | $19,000 |
| PAGA Payment | $15,000 |
| *LWDA Payment (75%)* | *$11,250* |
| *Remaining to Net Settlement Amount* | *$3,750* |
| Settlement Administration Costs | $10,441.45 |
| **Anticipated Net Settlement Amount** | **$204,308.55** |

(ECF No. 37-2, at 12-13); (ECF No. 37-1, ¶¶ 9, 13). In addition to the amounts in the settlement fund, Defendant "shall be responsible for paying . . . the employers' share of payroll taxes it is required to pay as the employer of the Plaintiff and Class Members, if any such payroll taxes are required." (ECF No. 37-2, at 7-8).

## II.   LEGAL STANDARD FOR CLASS ACTION CERTIFICATION AND SETTLEMENT

A court tasked with determining whether to approve a proposed class action settlement will almost always be required to engage in a "difficult balancing act." *Allen v. Bedolla*, 787 F.3d 1218, 1223 (9th Cir. 2015). "On the one hand, … there is a strong judicial policy that favors settlements, particularly where complex class action litigation is concerned." *Id.* (internal

1    quotation marks and citations omitted). "But on the other hand, settlement class actions present

2    unique due process concerns for absent class members, and the district court has a fiduciary duty

3    to look after the interests of those absent class members." *Id.* (internal quotation marks and

4    citations omitted). "The dangers of collusion between class counsel and the defendant, as well as

5    the need for additional protections when the settlement is not negotiated by a court-designated

6    class representative, weigh in favor of a more probing inquiry than may normally be required

7    under Rule 23(e)." *Hanlon*, 150 F.3d at 1026.

8         "To guard against this potential for class action abuse, Rule 23(e) of the Federal Rules of

9    Civil Procedure requires court approval of all class action settlements, which may be granted only

10   after a fairness hearing and a determination that the settlement taken as a whole is fair,

11   reasonable, and adequate." *In re Bluetooth Headset Prod. Liab. Litig.*, 654 F.3d 935, 946 (9th Cir.

12   2011) (citing Fed. R. Civ. P. 23(e)(2); *accord Staton v. Boeing Co.*, 327 F.3d 938, 972 n.22 (9th

13   Cir. 2003) (court's role is to police the "inherent tensions among class representation, defendant's

14   interests in minimizing the cost of the total settlement package, and class counsel's interest in

15   fees").

16        The Rule 23 class settlement process generally proceeds in two phases. In the first phase,

17   the court conditionally certifies the class, conducts a preliminary determination of the fairness of

18   the settlement (subject to a more stringent final review), and approves the notice of class action

19   settlement to be provided to the class. *Ontiveros v. Zamora*, 303 F.R.D. 356, 363 (E.D. Cal.

20   2014). The purpose of this preliminary review is to ensure that an appropriate class exists and that

21   the agreement is non-collusive, without obvious deficiencies, and within the range of possible

22   approval as to that class. *See True v. Am. Honda Motor Co.*, 749 F. Supp. 2d 1052, 1062 (C.D.

23   Cal. 2010); 4 William Rubenstein, *Newberg on Class Actions* § 13:13 (5th ed.). Thus, at the

24   preliminary approval stage, courts typically review attorney fee awards only to see if they are

25   "unreasonably high" or have questionable timing. *Lusk v. Five Guys Enterprises LLC*, No. 1:17-

26   CV-00762-AWI-EPG, 2019 WL 7048791, at *4 (E.D. Cal. Dec. 23, 2019) (citing, *inter alia*,

27   *Newberg on Class Actions* § 13.15 (5th ed.)); *accord Pokorny v. Quixtar Inc.*, No. 07-0201 SC,

28   2011 WL 2912864, at *1 (N.D. Cal. July 20, 2011) (deferring ruling on preliminary approval and

1  requiring additional briefing because, in part, "[w]hile a motion for attorneys' fees is not yet

2  before the Court, the apparent disproportion between the size of the Cash Fund and the amount of

3  attorneys' fees counsel intend to request is so great as to call into question the fairness of the

4  proposed settlement").

5  In the second phase, the court holds a full fairness hearing where class members may

6  present objections to class certification, or to the fairness of the settlement agreement. *Ontiveros*,

7  303 F.R.D. at 363 (citing *Diaz v. Trust Territory of Pac. Islands*, 876 F.2d 1401, 1408 (9th Cir.

8  1989)). Following the fairness hearing, taking into account all of the information before the court,

9  the court must confirm that class certification is appropriate, and that the settlement is fair,

10  reasonable, and adequate. *See Valdez v. Neil Jones Food Co.*, 2015 WL 6697926, at *8 (E.D. Cal.

11  Nov. 2, 2015); *Miller v. CEVA Logistics USA, Inc.*, 2015 WL 4730176, at *3 (E.D. Cal. Aug. 10,

12  2015).

13  **III.   DISCUSSION**

14  When the parties have entered into a settlement agreement before the district court

15  certifies the class, the court "must pay undiluted, even heightened, attention to class certification

16  requirements." *Staton*, 327 F.3d at 952–53 (internal quotation marks and citations omitted). For

17  class certification, the classes and sub-classes "must meet the four threshold requirements of

18  Federal Rule of Civil Procedure 23(a): numerosity, commonality, typicality, and adequacy of

19  representation." *Leyva v. Medline Indus. Inc.*, 716 F.3d 510, 512 (9th Cir. 2013) (citing Fed. R.

20  Civ. P. 23(a); *accord Hanlon*, 150 F.3d at 1019. The proposed class must also satisfy the

21  requirements of Rule 23(b), which defines the three different types of classes allowed. Fed. R.

22  Civ. P. 23(b); *Leyva*, 716 F.3d at 512. The plaintiff bears the burden of demonstrating that the

23  requirements of Rule 23 have been satisfied as to the proposed class. *See Wal–Mart Stores, Inc. v.

24  Dukes*, 564 U.S. 338, 350 (2011); *Narouz v. Charter Commc'ns, LLC*, 591 F.3d 1261, 1266 (9th

25  Cir. 2010). "A court that is not satisfied that the requirements of Rule 23 have been met should

26  refuse certification until [those requirements] have been met." Advisory Committee 2003 Note on

27  Fed. R. Civ. P. 23(c)(1).

28  As discussed below, the requirements for class certification in Rule 23(a) and (b) are

1  satisfied here. *See Leyva*, 716 F.3d at 512.

2     **A.     Rule 23(a) Requirements**

3         1.   Numerosity

4         A proposed class must be "so numerous that joinder of all members is impracticable."

5  Fed. R. Civ. P. 23(a)(1). "The numerosity requirement requires examination of the specific facts

6  of each case and imposes no absolute limitations." *Gen. Tel. Co. of the Nw. v. Equal Employment*

7  *Opportunity Comm'n*, 446 U.S. 318, 330 (1980). Courts in the Ninth Circuit have found the

8  requirement satisfied when the class is composed of as few as thirty-nine members. *See Murillo v.*

9  *Pac. Gas & Elec. Co.*, 266 F.R.D. 468, 474 (E.D. Cal. 2010) (citing *Jordan v. L.A. County*, 669

10  F.2d 1311, 1319 (9th Cir. 1982) (noting that class sizes of thirty-nine, sixty-four, and seventy-one

11  are sufficient to satisfy the numerosity requirement), *vacated on other grounds*, 459 U.S. 810, 103

12  (1982)).

13         Here, the proposed class is defined as:

14         all who are employed or have been employed by Defendant, in the State of
15         California, and who have worked one or more shifts as a non-exempt hourly
           agricultural employee, as defined by the California Labor Code, Industrial
16         Welfare Commission Wage Order 8-2001, and 29 U.S.C. §1892(3) from April 13,
           2014 through April 30, 2019.
17
   (ECF No. 37-2). There are approximately 370 members of this proposed class. (ECF No. 37-1, ¶
18
   8). The Court finds that Plaintiff has demonstrated that the numerosity requirements of Rule
19
   23(a)(1) are satisfied.
20
         2.   Commonality
21
         Rule 23(a)(2) requires that there be "questions of law or fact common to the class." Fed.
22
   R. Civ. P. 23(a)(2). "The commonality preconditions of Rule 23(a)(2) are less rigorous than the
23
   companion requirements of Rule 23(b)(3)." *Hanlon*, 150 F.3d at 1019. "Indeed, Rule 23(a)(2) has
24
   been construed permissively." *Id.* "All questions of fact and law need not be common to satisfy
25
   the rule." *Id.* "The existence of shared legal issues with divergent factual predicates is sufficient,
26
   as is a common core of salient facts coupled with disparate legal remedies within the class." *Id.*
27
   To satisfy commonality, there must be a "common contention … of such a nature that it is
28

6

capable of classwide resolution – which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011). A plaintiff can meet this burden by showing "[s]ignificant proof that an employer operated under a general policy" of harmful conduct if the conduct "manifested itself in hiring and promotion practices in the same general fashion . . . ." *Id.* at 353.

Here, Plaintiff contends that the class's claims involve common questions of both fact and law regarding whether Defendant (1) provided employees meal periods or compensate them in lieu thereof; (2) kept records of meal periods; (3) provided rest periods or compensated employees in lieu thereof; (4) provided accurate, itemized wage statements; (5) paid proper wages; (6) timely paid compensation upon separation of employment; (7) complied with = California labor law's requirements; (8) complied with the Migrant and Seasonal Agricultural Worker Protection Act's associated requirements; and (9) owes PAGA penalties. (ECF No. 37, at 14-15).

Plaintiff has demonstrated that the commonality requirements of Rule 23(a)(2) are satisfied. *See Wal-Mart*, 564 U.S. at 350.

3.      Typicality

Rule 23(a)(3) requires that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3); *see Armstrong v. Davis*, 275 F.3d 849, 868 (9th Cir. 2001). This typicality requirement is satisfied "when each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability." *Armstrong*, 275 F.3d at 868; *see also Kayes v. Pac. Lumber Co.*, 51 F.3d 1449, 1463 (9th Cir. 1995) (claims are typical where named plaintiffs have the same claims as other members of the class and are not subject to unique defenses). While representative claims must be "reasonably co-extensive with those of absent class members," they "need not be substantially identical." *Hanlon*, 150 F.3d at 1020; *see also Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992). In the employment context,

1  typicality will not be satisfied if: the class representative is not a member of the
2  class she purports to represent; the class representative is subject to a unique
   defense, but only if that defense threatens to become the focus of the litigation;
3  major factual differences exist between the class representative's situation and
   those of the absent class members; or the legal theory underlying the class
4  representative's claims conflicts with the legal theories of the class members.

5  7 William B. Rubenstein, *Newberg on Class Actions* § 23:23 (5th ed.).

6       Here, Plaintiff was an almond sheller / huller at Defendant's Kerman, California site from

7  August 16, 2017 to December 5, 2017. (ECF No. 37-1, at ¶ 21). Plaintiff's claims concern

8  Defendant's general practices, so his claims are typical in that regard. Moreover, there appear to

9  be no defenses specific to Plaintiff. However, two aspects warrant the Court's attention: Plaintiff

10  worked at only one of Defendant's two sites and he was employed for only four months during

11  the five-year class period.[2]

12       Plaintiff's counsel stated at the hearing that, after conducting significant discovery, it

13  appeared Plaintiff's case hinged on Defendant's practices, not their policies. In his supplemental

14  brief, Plaintiff argues that the relevant policies applied to employees at both locations. (ECF

15  No.45-3, at 3-5). At least some evidence that Plaintiff provided confirms this. Defendant's chief

16  operating officer, Robert Donnelly, testified that he agreed with the statement "that all the

17  policies [concerning meals and rest breaks] were applied equally to all employees at all times,"

18  including with respect to Plaintiff. (ECF No. 45-2, at 4-5). And Ashley Castro, who performs all

19  human resources functions for Defendant, including payroll, provided similar testimony. (ECF

20  No. 45-1, at 3, 5, 7). Thus, according to Plaintiff, Defendant's relevant practices applied to all

21  California hourly employees.

22       And even though Plaintiff was employed only briefly, it appears his claims were still

23  typical of the class. Courts can find representatives typical even if they are employed for only a

24

25  [2] Defendant operates shelling plants in Kerman and Sanger, CA. At the hearing, Plaintiff indicated that Plaintiff's
    claims rested mostly on Defendant's actual practices, rather than its policies. The Court ordered additional briefing
26  concerning Plaintiff's typicality and adequacy, given that Plaintiff was subject only to Defendant's practices at the
    Kerman location. Plaintiff argues that Defendant's Sanger location is "much smaller" and "currently" has only five
27  employees. That is somewhat misleading. There were only five when Defendant's witness Ashley Castro was
    deposed, but during shelling season (the relevant period), Ms. Castro testified Sanger has "about 30" employees.
    (ECF No. 45-1, at 6). Kerman is larger, though. Per Ms. Castro, it has "about a hundred" employees during season.
28  (*Id.* at 5).

1    short period. *See Ribot v. Farmers Ins. Grp.*, No. 2:11-cv-02404, 2013 WL 3778784, at *11 (C.D.

2    Cal. July 17, 2013), *modified on clarification on other grounds*, 2013 WL 5351085 (C.D. Cal.

3    Sept. 24, 2013); *cf. 7 Newberg on Class Actions* § 23:23 ("Courts will certify classes that include

4    past, present, and future employees if the challenge is to an overarching discriminatory policy that

5    impacts all three groups . . . .").

6            Those two shortcomings are analogous to a plaintiff's in the wage-and-hour class action

7    *Ribot*. There, a plaintiff was a trainee customer service representative for only four months with a

8    class period of approximately five years. *Id.* at *3-4, 11. Nevertheless, there were no indications

9    that the trainee position was different from a regular position, and "[l]ike other class members,

10   she would have been subject to a policy of requiring off-the-clock work and would have suffered

11   the same injury as a result." *Id.* at *11. Moreover, the court concluded that "[h]er typicality does

12   not appear to be impaired by her trainee status or her relatively brief period of employment." *Id.*

13          Likewise, Urena was employed at one of two locations. Again, there are no indications

14   that the practices differed between the facilities. Also like *Ribot*, he was employed for four

15   months out of a five-year class.

16          Therefore, the Court finds that Plaintiff's claims are typical because his claims are

17   reasonably coextensive with those of absent class members.

18                            4.    Adequacy of Representation

19          Before the Court can certify a class, the Court must be satisfied that "the representative

20   parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). "[A]

21   class representative must be part of the class and 'possess the same interest and suffer the same

22   injury' as the class members." *Amchem Prod., Inc. v. Windsor*, 521 U.S. 591, 625-26 (1997)

23   (citations omitted). "The proper resolution of this issue requires that two questions be addressed:

24   (a) do the named plaintiffs and their counsel have any conflicts of interest with other class

25   members and (b) will the named plaintiffs and their counsel prosecute the action vigorously on

26   behalf of the class?" *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 462 (9th Cir. 2000), *as*

27   *amended* (June 19, 2000) (citations omitted).

28          Here, Plaintiff class representative, Urena, has submitted evidence that there is no conflict

9

of interest between him and the rest of the class, and his counsel has so averred. (ECF No. 45 ¶ 4). As discussed with typicality above, Plaintiff possesses the same injuries as absent proposed class members. His counsel also has averred that he has vigorously prosecuted this case. (*Id.* ¶ 5) (declaring that Plaintiff "has worked to actively represent" the proposed class, has been in regular contact with counsel, compiled information and documents, and provided "helpful information" to counsel throughout the litigation).The Court finds that Plaintiff Urena satisfies the adequacy of representation requirement.

Plaintiff's counsel also avers that it has no conflicts with the proposed class members. (ECF No. 37-1 ¶ 27). Plaintiff's counsel declares it has extensive experience prosecuting similar class actions and has received class certification in fourteen wage-and-hour class actions. (ECF No. 37-1 ¶¶ 28-29) (listing cases). The Court finds that Plaintiff class representative's current counsel of Kinglsey & Kingsley APC satisfies the adequacy requirements with respect to the proposed class.

### B.      Rule 23(b) Requirements

Plaintiff seeks certification under Rule 23(b)(3), which requires that "the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3); *see also Amchem*, 521 U.S. at 615. The test of Rule 23(b)(3) is "far more demanding," than that of Rule 23(a). *Wolin v. Jaguar Land Rover N. Am.*, LLC, 617 F.3d 1168, 1172 (9th Cir. 2010) (quoting *Amchem*, 521 U.S. at 623–24).

### 1.      Predominance

First, questions of law or fact common to class members must predominate over any questions affecting only individual members. Fed. R. Civ. P. 23(b)(3). This "predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Hanlon*, 150 F.3d at 1022 (quoting *Amchem*, 521 U.S. at 623). "This analysis presumes that the existence of common issues of fact or law have been established pursuant to Rule 23(a)(2); thus, the presence of commonality alone is not sufficient to fulfill Rule 23(b)(3)." *Id.* "In contrast to Rule 23(a)(2), Rule 23(b)(3) focuses on the relationship between the common

1    and individual issues." *Id.* "When common questions present a significant aspect of the case and

2    they can be resolved for all members of the class in a single adjudication, there is clear

3    justification for handling the dispute on a representative rather than on an individual basis." *Id.*

4    (quoting 7A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice &*

5    *Procedure* § 1778 (2d ed.1986)).

6         Here, Plaintiff asserts that common questions to class members raised in this action

7    predominate over any individualized questions. The Court agrees. Plaintiff's case hinges on

8    whether Defendants maintained uniform practices of failing to provide employees with compliant

9    meal and rest breaks. If Defendant did not, Plaintiff maintains the class suffered unpaid wages

10   and inaccurate wage statements. (ECF No. 10 ¶¶ 30-35) (allegations in amended complaint

11   concerning meal and rest breaks and problems with wages and wage statements). The Court finds

12   that the predominance requirement is met here.

13              2.   <u>Superiority</u>

14        Under Rule 23(b)(3), a class action must be "superior to other available methods for fairly

15   and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). The matters pertinent to

16   this finding include: "(A) the class members' interests in individually controlling the prosecution

17   or defense of separate actions; (B) the extent and nature of any litigation concerning the

18   controversy already begun by or against class members; (C) the desirability or undesirability of

19   concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties in

20   managing a class action." *Id.; see Amchem*, 521 U.S. at 616.

21        Here, Plaintiff contends that a class action is superior to other available means for the fair

22   and efficient adjudication of the claims. There are approximately 370 members of the putative

23   class, and the expected recovery (as discussed below) is $552 per plaintiff. It is not economical

24   for each class member to bring his or her claim separately. Thus, "[t]his case involves multiple

25   claims for relatively small individual sums. . . . If plaintiffs cannot proceed as a class, some –

26   perhaps most – will be unable to proceed as individuals because of the disparity between their

27   litigation costs and what they hope to recover." *Local Joint Exec. Bd. of Culinary/Bartender Tr.*

28   *Fund v. Las Vegas Sands*, 244 F.3d 1152, 1163 (9th Cir. 2001); *see Phillips Petroleum Co. v.*

1   *Shutts*, 472 U.S. 797, 809 (1985) (class actions can provide a mechanism for plaintiffs to pool

2   claims that "would be uneconomical to litigate individually"); Wright, Miller & Kane, *supra,* at §

3   1779 ("[I]f a comparative evaluation of other procedures reveals no other realistic possibilities,

4   this [superiority] portion of Rule 23(b)(3) has been satisfied.").

5          Further, it is unlikely that individual members of the proposed class have any interest in

6   individually controlling the prosecution or defense of individual actions. Lack of knowledge of

7   the legal system and limited economic resources would also likely deprive most class members of

8   the opportunity to pursue their claims outside of a class action. Class action treatment will allow

9   these similarly situated workers to litigate their claims in the manner that is most efficient and

10  economical for the parties and the judicial system. There also does not appear to be any related

11  pending litigation. Finally, there are no apparent difficulties likely to be encountered in managing

12  this class action. The Court finds that the superiority requirement is met here.

13          **C.     Rule 23(e)(2) Preliminary Fairness Determination**

14          Plaintiff requests preliminary approval of the settlement agreement filed at ECF No. 37-2.

15  If a proposed settlement agreement will bind absent class members, the Court must find that it is

16  "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2). A court considers whether:

17      (A) the class representatives and class counsel have adequately represented the
        class;
18      (B) the proposal was negotiated at arm's length;
        (C) the relief provided for the class is adequate, taking into account:
19          (i) the costs, risks, and delay of trial and appeal;
            (ii) the effectiveness of any proposed method of distributing relief to the
20          class, including the method of processing class-member claims;
            (iii) the terms of any proposed award of attorney's fees, including timing
21          of payment; and
            (iv) any agreement required to be identified under Rule 23(e)(3); and
22      (D) the proposal treats class members equitably relative to each other.

23  Fed. R. Civ. P. 23(e)(2). The Ninth Circuit has provided further guidance regarding the Rule 23

24  factors. Although the exact factors will vary from case to case, courts generally must weigh:

25

26      (1) the strength of the plaintiff's case; (2) the risk, expense, complexity, and likely
        duration of further litigation; (3) the risk of maintaining class action status
27      throughout the trial; (4) the amount offered in settlement; (5) the extent of
        discovery completed and the stage of the proceedings; (6) the experience and
28      views of counsel; (7) the presence of a governmental participant; and (8) the

reaction of the class members of the proposed settlement."

*Id.* (citations omitted). "This list is not exclusive and different factors may predominate in different factual contexts." *Torrisi v. Tucson Elec. Power Co.*, 8 F.3d 1370, 1376 (9th Cir. 1993) (citations omitted).

When the parties settle before class certification, a court must also take extra care to ensure that "the settlement is not the product of collusion among the negotiating parties." *Bluetooth*, 654 F.3d at 946.

Here, after balancing the relevant factors, the Court finds that it is appropriate to grant preliminary approval.

### 1. Risks of Continued Litigation and Strength of Plaintiff's Case

Along with the standard risks in class action cases at this stage—such as the risk of obtaining and maintaining class certification—Plaintiff identifies several weaknesses in his case that, he argues, warrant a drastic downward departure from the maximum possible recovery.

Plaintiff's counsel represented that following discovery, Plaintiff's case relied on Defendant's practices, rather than its policies. The facts elicited during Plaintiff's deposition testimony, along with evidence proffered by Defendants and lack of clarity in the law, weakened his case.

### a)   Weaknesses in Meal and Rest Period Claims

Plaintiff alleged that Defendant violated California labor law because the employees' mandated, 30-minute meal periods were "routinely . . . shorter than 30 minutes, or were never offered at all." (ECF No. 10, ¶ 33). However, that does not align with Plaintiff's deposition testimony, during which he testified that he received lunch breaks every day:

> Q. Were there any days that you worked in the stockpile yard where you do not believe that you took a lunch break?
> . . .
> THE WITNESS: I can't remember.
> BY MR. BAUER: Q. Okay. Do you remember any days working in the stockpile yard where you didn't go eat your lunch that you had put in the refrigerator at Paradise?
> A. No.

(ECF No. 41-1, Urena Dep. Tr. at 110:4-14).

He also did not time how long his lunch breaks were, and he seemed to admit they were 30 minutes long:

> Q. And how often would you time how long your lunch break was?
> A. Well, we didn't really have to, because they would come on the Gator and scoop us up. They would be -- I mean, they would be there on the dot. As soon as the break was over, they would be there and pick us up.
> Q. So as soon as the 30 minutes was up, they would come and grab you –
> A. Yeah.
> Q. -- take you back to the stockpile yard?
> A. Or holler at us. Yeah.

(*Id.* at 104:14-24).

Plaintiff also claimed employees were unable to leave the premises for their rest breaks as required by California law. However, his counsel attested that Defendant proffered an employee's declaration saying he was free to leave the premises for rest breaks. (ECF No. 37-1 ¶ 49).

Other aspects of Plaintiff's case apparently lack clear support in case law. For instance, generally, employees working shifts longer than ten hours must be provided a second, thirty-minute meal period. Cal. Labor Code § 512(a) ("An employer shall not employ an employee for a work period of more than 10 hours per day without providing the employee with a second meal period of not less than 30 minutes . . . ."). Plaintiff represented that Defendant's meal policy fails to state when the second meal period must commence; the parties contest whether policies must so state. Plaintiff represents that this claim was discounted due to the possibility that the policy is lawful. (ECF Nos. 37, at 24-25 and 37-1, at 11-12).

*b)*    *Weaknesses in Unpaid Wages Claim*

Plaintiff's complaint alleged that Defendant improperly automatically deducted meal periods from time worked. (ECF No. 10 ¶ 33). According to Plaintiff, employees did not receive the meal periods, so the automatic deduction was improper. (*Id.*). Plaintiff now believes a discount from this claim is warranted because Defendant might be able to establish that the meal periods were provided. (ECF No. 37 at 26-27).

//

1

*c)    Weaknesses in Derivative Claims*

2      Plaintiff sought waiting time penalties for Defendant's alleged failure to timely pay its

3 employees. According to Plaintiff's counsel, Plaintiff's main basis for waiting time penalties was

4 that Defendant failed to pay premium payments owed to former employees who missed meal

5 breaks, rest breaks, or both. (ECF No. 37-1 ¶ 58). A California Court of Appeals case cast

6 Plaintiff's claim in doubt by holding that the premiums in Labor Code § 226.7 "do not entitle

7 employees to pursue the derivative penalties in sectio[n] 203 . . . ." *Naranjo v. Spectrum Sec.*

8 *Servs., Inc.*, 40 Cal. App. 5th 444, 474 (2019). Although this case has been accepted for review by

9 the California Supreme Court, the Plaintiff discounted that claim. Plaintiff was also unsure

10 whether Defendant was willful in failing to pay its employees final wages owed upon separation,

11 which is necessary to obtain waiting time penalties. (*Id.* ¶ 60).

12      Plaintiff also sought wage statement penalties, Migrant and Seasonal Agricultural Worker

13 Protection Act penalties, and PAGA penalties, each of which is derivative on his other claims.

14 The weaknesses in the other cases informed Plaintiff's counsel about the settlement size. (ECF

15 No. 37-1 ¶¶ 62-63).

16      The Court finds that the first, second, and third factors in *Bluetooth* weigh in favor of

17 settlement.

18               2.    The Amount Offered in Settlement

19      In determining whether the amount offered in settlement is fair and reasonable, a court

20 compares the proposed settlement amount to the best possible outcome for the class. *See*

21 *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 964 (9th Cir. 2009). "It is well-settled law that a

22 cash settlement amounting to only a fraction of the potential recovery does not per se render the

23 settlement inadequate or unfair." *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 459 (9th Cir.

24 2000), *as amended* (June 19, 2000) (citation omitted). For complex class action cases, Ninth

25 Circuit has "a strong judicial policy that favors settlements. Parties represented by competent

26 counsel are better positioned than courts to produce a settlement that fairly reflects each party's

27 expected outcome in litigation." *In re Pacific Enter. Sec. Lit.*, 47 F.3d 373, 378 (9th Cir. 1995)

28 (internal quotation marks and citation omitted).

1       Here, the settlement provides for a maximum payment of $375,000.[3] Before fees and

2   costs, that settlement is 1.266% of the maximum amount of $29,611,809. Given the use of a

3   mediator and both parties' competent counsel, the Court finds that the parties are better positioned

4   than this Court to produce a settlement that fairly reflects the expected outcome. *See In re Pacific*

5   *Enter. Sec. Lit.*, 47 F.3d at 378.  A substantial portion of the maximum potential recovery is

6   threatened by *Naranjo*. This may in part warrant a downward departure. *See In re Pacific Enter.*

7   *Sec. Lit.*, 47 F.3d at 378 (approving $12 million settlement where maximum damages allegedly

8   exceeded $1 billion in part because risk of California statute of limitations).

9       This is a substantial discount. Plaintiff has not pointed the Court to cases with similar

10  discounts. However, given Plaintiff's extensive briefing about the weaknesses in his case, the

11  presence of a mediator, and the representations made at the hearing, the Court is persuaded that

12  counsel's explanation suffices for preliminary approval. Counsel may wish to garner additional

13  support for this substantial discount at final approval. *See Ferrell v. Buckingham Prop. Mgmt.*,

14  No. 1:19-CV-00332-LJO-SAB, 2020 WL 291042, at *18-19 (E.D. Cal. Jan. 21, 2020) (granting

15  preliminary approval of class action settlement where total settlement was approximately 5.2% of

16  the initial valuation and one claim was only 1% of the initial valuation but noting "that more

17  extensive explanation and support for the discounting may be needed to demonstrate fairness at

18  the final approval hearing").

19              3.    Nature of Settlement Negotiations; Extent of Discovery; Stage of

20                    Proceedings; Experience and Views of Counsel

21      "An initial presumption of fairness is usually involved if the settlement is recommended

22  by class counsel after arm's-length bargaining." *Riker v. Gibbons*, No. 3:08-CV-00115-LRH,

23  2010 WL 4366012, at *2 (D. Nev. Oct. 28, 2010) (quoting 4 Alba Conte & Herbert B. Newberg,

24  *Newberg on Class Actions* § 11:42 (4th ed.2002)); *see also Nat'l Rural Telecommunications*

25  *Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 527–28 (C.D. Cal. 2004) ("A settlement following

26

27  _____
    [3] Of the $375,000 settlement, $204,308.55 is expected to go to the claimants. Each claimant will receive that net settlement amount multiplied by (a) the number of compensable work weeks the claimant worked, divided by (b) the total number of compensable work weeks for all class members. (ECF No. 37-2, at 11). If all 370 class members participate and the net settlement amount remains unchanged, the average payment will be $552.18.

28

16

1   sufficient discovery and genuine arms-length negotiation is presumed fair." (citations omitted)).

2       Plaintiff's counsel declares that the settlement took months of adversarial, non-collusive,

3   arm's-length negotiations with the help of an experienced mediator, Hon. Howard Broadman

4   (ret.). (ECF No. 37-1 ¶¶ 5, 7, 36). According to Plaintiff's counsel, the parties had engaged in

5   several months of discovery, including interrogatories, document production, and depositions. (*Id.*

6   ¶ 4). Defendant's most qualified persons and Plaintiff were deposed. (*Id.* ¶ 6).

7       Through this process, Plaintiff determined the class's maximum potential recovery was

8   $29,611,809. (ECF No. 37-1 ¶ 39). Most of that amount was waiting time penalties for four years.

9   If reduced to one year, the maximum potential damages[4] is approximately $11 million. (*Id.*). The

10   Court concludes the parties were able to evaluate the strengths and weaknesses of their case and

11   the risks of continued litigation through this process. And as discussed above, the parties found

12   substantial weaknesses in Plaintiff's case, warranting a substantial discount from the potential

13   maximum. Both Plaintiff's and Defendant's counsel view this settlement is fair and reasonable.

14   (ECF No. 37-1 ¶¶ 30, 41).

15       The Court thus finds the fifth and sixth factors, along with those in Rule 23(e)(2)(B),

16   factor approving this settlement.

17            4.     <u>Presence of a Governmental Participant</u>

18       Although there is no governmental party to this lawsuit, the California Labor &

19   Workforce Development Agency ("LWDA") may express its views. Under California Labor

20   Code § 2699(*l*)(2), a "proposed settlement shall be submitted to the [LDWA] at the same time

21   that it is submitted to the court" for the LWDA's review and approval. Plaintiff submitted the

22   proposed settlement on April 3, 2020. (ECF No. 37-2). The parties did not submit the proposed

23   settlement for review until June 5, 2020. (ECF No. 44).

24       The Labor Code does not state what a court should do when a settlement is submitted late.

25   The parties, in their joint statement, point the Court to no answer. (ECF No. 44). Other courts

26   have noted that the notice provision exists "to allow the LWDA to comment on the settlement if

27

28   ―――――――――――――
[4] Plaintiff uses the phrase "damages exposure total," which the Court takes to be equivalent to the maximum potential damages.

1   the LWDA so desires." *Haralson v. U.S. Aviation Servs. Corp.*, 383 F. Supp. 3d 959, 971 (N.D.

2   Cal. 2019) (quoting *Ramirez v. Benito Valley Farms, LLC*, No. 16-cv-04708, 2017 WL 3670794,

3   at *2 (N.D. Cal. Aug. 25, 2017)); *accord Castro v. Paragon Indus., Inc.*, No. 1:19-cv-755-DAD-

4   SKI, 2020 WL 1984240, at *12 (E.D. Cal. April 27, 2020) (citing *Haralson* for the same). *But see*

5   *Shann v. Durham Sch. Servs., L.P.*, 182 F. Supp. 3d 1044, 1047 (C.D. Cal. 2016) (dismissing

6   PAGA claim for insufficient *pre-filing* notice required by Cal. Labor Code § 2699.3(a)(1)).

7          Given the purpose of section 2699(*l*)(2), that a substantial time has passed since the parties

8   notified PAGA, and that the requirement does not appear to be jurisdictional, the Court finds that

9   the late notice does not defeat the settlement. Final settlement will not happen for some time, and

10  the LWDA will have ample opportunity to voice its views before final approval.

11         Therefore, the seventh factor in *Bluetooth* weighs in favor of approving the settlement.

12              5.    Additional Factors

13         The factors listed above are not exclusive. *In re Bluetooth*, 654 F.3d at 946. The Court

14  also notes the following factors from Rule 23 and elsewhere.[5]

15              a)    *Effectiveness of Proposed Method of Distributing Relief*

16         The Court is to consider "the effectiveness of any proposed method of distributing relief

17  to the class, including the method of processing class-member claims." Fed. R. Civ. P.

18  23(e)(2)(C)(ii).

19         Under the current plan, each class member's settlement payment will be mailed first class

20  by the U.S. Postal Service to the member's last known address. Class members will receive a

21  portion of the settlement unless they opt out, as discussed *infra*. (ECF No. 37-2, at 11). The initial

22  notice is six pages long, (ECF No. 37-2, at 21-26), and will be translated into Spanish, (ECF No.

23  37-1 ¶ 68). It will be prepopulated with the number of workweeks and the estimated settlement

24  amount.

25         Subject to the Court's discussion below concerning notice procedures generally, the Court

26  is satisfied with the proposed method of distribution.

27  ───────────────

28  [5] The eighth factor—the class's reaction—is not relevant for preliminary approval, for the class has not yet received
    notice.

1

*b)      Cy Pres Award*

2        "In a majority of class actions at least some unclaimed damages or unlocated class

3    members remain." *Six (6) Mexican Workers v. Arizona Citrus Growers*, 904 F.2d 1301, 1306 (9th

4    Cir. 1990).  There are four main methods of distributing unclaimed class funds: "(1) reversion to

5    the defendant; (2) *pro rata* redistribution among the class members who did make claims; (3)

6    escheat to the state; and (4) *cy pres* distribution to charitable organizations." 4 William

7    Rubenstein, *Newberg on Class Actions* § 12:30 (5th ed.).[6]

8        Here, the parties selected a cy pres recipient to receive any unclaimed funds. "The *cy pres*

9    doctrine allows a court to distribute unclaimed or non-distributable portions of a class action

10    settlement fund to the 'next best' class of beneficiaries." *Nachshin v. AOL, LLC*, 663 F.3d 1034,

11    1036 (9th Cir. 2011). In the Ninth Circuit, a "*cy pres* distribution must be guided by (1) the

12    objectives of the underlying statute(s) and (2) the interests of the silent class members." Id. at

13    1039 (rejecting *cy pres* distribution in a class-action case concerning the Electronic

14    Communications Privacy Act and various state-law claims to Legal Aid Foundation of Los

15    Angeles; the Federal Judicial Center Foundation; the Boys and Girls Club of America's Los

16    Angeles and Santa Monica chapters; New Roads School of Santa Monica; Oklahoma Indian

17    Legal Services; and the Friars Foundation; the awards did not address the objectives of the

18    underlying statutes, target the plaintiff class, or provide reasonable certainty that any member will

19    be benefitted).

20        Deciding upon a *cy pres* recipient is premature. *See Rodriguez v. West Publishing Corp.*,

21    563 F.3d 948, 966 (9th Cir. 2009). In *Rodriguez*, objectors appealed a district court's approval of

22    a settlement. *Id.* at 954. The Ninth Circuit held their objections to the *cy pres* distribution were

23    premature because the "issue becomes ripe only if the entire settlement fund is not distributed to

24    class members. That trigger point has not been reached; no *cy pres* disbursement is imminent; and

25    _____

26    [6] Although the Ninth Circuit "express[ed] no view as to the propriety of" *pro rata* distributions to claiming class
members," *Six (6) Mexican Workers*, 904 F.2d at 1307 n.4., district courts have permitted such distributions, *see, e.g.,*

27    *Vandervort v. Balboa Capital Corp.*, 8 F. Supp. 3d 1200, 1204 (C.D. Cal. 2014) (approving settlement whereby any
initially unclaimed portion would be distributed to claiming class members up to a set maximum, and after which any

28    unclaimed portion would be distributed to a to-be-determined *cy pres* charity).

1  the fund in this case may well be depleted before *cy pres* kicks in." *Id.* at 966 (citation omitted).

2  Likewise, here, there is no imminent *cy pres* distribution, so any such determination is unripe.

3       The Court cautions, however, that the parties' *cy pres* recipient might not qualify under

4  the Ninth Circuit's standards. The parties designated CASA of Fresno County as the *cy pres*

5  recipient, which would receive funds from checks not cashed within 180 days or returned as

6  undeliverable.   (ECF No. 37-2, at 11). The Court believes the parties are referring to Court

7  Appointed Special Advocates of Fresno and Madera Counties. According to the organization's

8  tax Form 990 filed in 2017, "CASA of Fresno and Madera Counties is a 501(c)[(]3[)] community

9  based nonprofit organization whose mission is to recruit, train, and support citizen volunteers to

10  advocate and speak for the best interests of abused and neglected children in the Child Welfare

11  and Juvenile Court Systems." Court Appointed Special Advocates of Fresno and Madera

12  Counties, *Tax Form 990*,

13  https://apps.irs.gov/pub/epostcard/cor/770401361_201806_990_2019072616524637.pdf.[7] CASA

14  of Fresno and Madera Counties may be a noble organization. But it does not appear to have any

15  relation to California labor laws, and its target population—children in the Child Welfare and

16  Juvenile Court Systems—are unlikely to be in the proposed class.

17       At the final approval stage, the Court will consider this issue further, including whether a

18  more fitting charitable organization(s) should be used, or whether there can be a *pro*

19  *rata* redistribution among the class members who did make claims.

20       **D.**    **Fees, Costs, and Representative Service Payment**

21            1.   <u>Attorney Fees and Costs</u>

22       Under the terms of the Settlement Agreement, Plaintiff's counsel will make a separate

23  application to the Court for an award of attorneys' fees of not more than 33.33% of the gross

24  settlement amount plus a maximum of $19,000 in costs. (ECF No. 37-2, at 12).

25       When a negotiated class action settlement includes an award of attorneys' fees, the fee

26  award must be evaluated in the overall context of the settlement. *Knisley v. Network Assocs.*, 312

27  
28  

---

[7] The Court takes judicial notice of this filing and its self-description. *See* Fed. R. Evid. 201(b)(2), (c)(1); *see also Africare, Inc. v. Xerox Complete Doc. Solutions Md., LLC*, --- F. Supp. 3d ----, 2020 WL 255856, at * 17 n.21 (D.D.C. Jan. 17, 2020) (taking judicial notice of Form 990s).

1   F.3d 1123, 1126 (9th Cir. 2002). At the same time, the court "ha[s] an independent obligation to

2   ensure that the award, like the settlement itself, is reasonable, even if the parties have already

3   agreed to an amount." *Bluetooth*, 654 F.3d at 941; *see also Zucker v. Occidental Petroleum Corp.*,

4   192 F.3d 1323, 1328–29 (9th Cir. 1999). Where, as here, fees are to be paid from a common fund,

5   the relationship between the class members and class counsel "turns adversarial." *In re*

6   *Washington Pub. Power Supply Sys. Sec. Litig.*, 19 F.3d 1291, 1302 (9th Cir. 1994). As a result,

7   the district court must assume a fiduciary role for the class members in evaluating a request for an

8   award of attorney fees from the common fund. *Id.*; *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948,

9   968 (9th Cir. 2009).

10        The Ninth Circuit has approved two methods for determining attorneys' fees in cases

11   where the attorneys' fee award is taken from the common fund set aside for the entire settlement:

12   the "percentage of the fund" method and the "lodestar" method. *Vizcaino v. Microsoft Corp.*, 290

13   F.3d 1043, 1047 (9th Cir. 2002) (citation omitted). The district court retains discretion in common

14   fund cases to choose either method. *Id.*; *Vu v. Fashion Inst. of Design & Merch.*, No. CV 14-

15   08822 SJO (EX), 2016 WL 6211308, at *5 (C.D. Cal. Mar. 22, 2016). Under either approach,

16   "[r]easonableness is the goal, and mechanical or formulaic application of either method, where it

17   yields an unreasonable result, can be an abuse of discretion." *Fischel v. Equitable Life Assurance*

18   *Soc'y of the U.S.*, 307 F.3d 997, 1007 (9th Cir. 2002).

19        Under the percentage of the fund method, the court may award class counsel a given

20   percentage of the common fund recovered for the class. *Id.* In the Ninth Circuit, a twenty-five

21   percent award is the "benchmark" amount of attorneys' fees, but courts may adjust this figure

22   upwards or downwards if the record shows "special circumstances justifying a departure." *Id.*

23   (quoting *Six (6) Mexican Workers v. Ariz. Citrus Growers*, 904 F.2d 1301, 1311 (9th Cir. 1990)).

24   Percentage awards of between twenty and thirty percent are common. *See Vizcaino*, 290 F.3d at

25   1047; *In re Activision Sec. Litig.*, 723 F. Supp. 1373, 1377 (N.D. Cal. 1989) ("This court's review

26   of recent reported cases discloses that nearly all common fund awards range around 30% even

27   after thorough application of either the lodestar or twelve-factor method."). Nonetheless, an

28   explanation is necessary when the district court departs from the twenty-five percent benchmark.

1 | *Powers v. Eichen*, 229 F.3d 1249, 1256–57 (9th Cir. 2000).

2 |   Factors courts may consider when assessing a requested percentage include:

3
4 | the extent to which class counsel achieved exceptional results for the class, whether the case was risky for class counsel, whether counsel's performance generated benefits beyond the cash settlement fund, the market rate for the
5 | particular field of law (in some circumstances), the burdens class counsel experienced while litigating the case (e.g., cost, duration, foregoing other work),
6 | and whether the case was handled on a contingency basis.

7 | *In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 954–55 (9th Cir. 2015) (internal

8 | quotation marks omitted). The Ninth Circuit has permitted courts to award attorneys' fees using

9 | this method "in lieu of the often more time-consuming task of calculating the lodestar."

10 | *Bluetooth*, 654 F.3d at 942.

11 |   Plaintiff brings various state law claims and, under California law, "[t]he primary method

12 | for establishing the amount of reasonable attorney fees is the lodestar method." *In re Vitamin*

13 | *Cases*, 110 Cal. App. 4th 1041, 1053 (2003) (internal quotation marks and citations omitted). The

14 | court determines the lodestar amount by multiplying a reasonable hourly rate by the number of

15 | hours reasonably spent litigating the case. *See Ferland v. Conrad Credit Corp.*, 244 F.3d 1145,

16 | 1149 (9th Cir. 2001). The product of this computation, the "lodestar" amount, yields a

17 | presumptively reasonable fee. *Gonzalez v. City of Maywood*, 729 F.3d 1196, 1202 (9th Cir.

18 | 2013); *Camacho v. Bridgeport Fin., Inc.*, 523 F.3d 973, 978 (9th Cir. 2008). The Ninth Circuit

19 | has recommended that district courts apply one method but cross-check the appropriateness of the

20 | amount by employing the other as well. *See Bluetooth*, 654 F.3d at 944.

21 |   Here, Plaintiff will seek maximum attorneys' fees of 33.33% of the gross settlement

22 | amount and $19,000 for litigation costs. (ECF No. 37-1 ¶ 9). Plaintiff's counsel will set forth the

23 | exact amounts requested in a motion for final approval, which will be filed after the response

24 | deadline. (*Id.*; ECF No. 37-2, at 14.)  This fee amount is above the benchmark for this circuit. *See*

25 | *Bluetooth*, 654 F.3d at 947 (setting a 25% benchmark); *Staton*, 327 F.3d at 952 (same); *Six (6)*

26 | *Mexican Workers*, 904 F.2d at 1311 (same). However, the percentage is not unreasonable as an

27 | upper bound. As such, the Court approves the attorneys' fee request on a preliminary basis, but

28 |

1   reserves the right to further consider and reduce this amount when it considers final approval.

2       When the application for attorneys' fees is submitted, Plaintiff's counsel will be required

3   to explain the "special circumstances justifying a departure" from the benchmark. *See Bluetooth*,

4   654 F.3d at 942. In connection with the final fairness hearing, the Court will cross check the

5   requested amount with the lodestar amount based upon counsels' submission and will determine

6   whether the award of an above-benchmark percentage in fees is reasonable here. *See Powers v.*

7   *Eichen*, 229 F.3d 1249, 1256-57 (9th Cir. 2000) (noting that an explanation is necessary when the

8   district court departs from the twenty-five percent benchmark).

9                   2.       Class Representative Service Payment

10       A district court may award incentive payments to named plaintiffs in class action cases.

11   *Rodriguez*, 563 F.3d at 958–59. The purpose of incentive awards is to "compensate class

12   representatives for work done on behalf of the class, to make up for financial or reputational risk

13   undertaking in bringing the action, and, sometimes, to recognize their willingness to act as a

14   private attorney general." *Id.* To justify an incentive award, a class representative must present

15   "evidence demonstrating the quality of plaintiff's representative service," such as "substantial

16   efforts taken as class representative to justify the discrepancy between [his] award and those of

17   the unnamed plaintiffs." *Alberto v. GMRI, Inc*., 252 F.R.D. 652, 669 (E.D. Cal. 2008).  Such

18   incentive awards are particularly appropriate in wage-and-hour actions where a plaintiff

19   undertakes a significant reputational risk in suing her former employer. *Rodriguez*, 563 F.3d at

20   958-59.

21       The Ninth Circuit has emphasized, however, that "district courts must be vigilant in

22   scrutinizing all incentive awards." *Radcliffe v. Experian Info. Sols., Inc*., 715 F.3d 1157, 1165

23   (9th Cir. 2013) (internal quotation marks and citation omitted). In keeping with that admonition,

24   district courts have declined to approve incentive awards that represent an unreasonably high

25   proportion of the overall settlement amount or are disproportionate relative to the recovery of

26   other class members. *See Ontiveros*, 303 F.R.D. at 365-66 (finding an incentive award of

27   $20,000, comprising 1% of the common fund, to be excessive under the circumstances, and

28   reducing the award to $15,000, where class representative spent 271 hours on the litigation and

1  relinquished the opportunity to bring several of his own claims in order to act as class

2  representative)*; see also Ko v. Natura Pet Prods., Inc.*, Civ. No. 09–2619 SBA, 2012 WL

3  3945541, at *15 (N.D. Cal. Sept. 10, 2012) (holding that an incentive award of $20,000,

4  comprising one percent of the approximately $2 million common fund was "excessive under the

5  circumstances" and reducing the award to $5,000); *Wolph v. Acer Am. Corp.*, No. C 09–01314

6  JSW, 2013 WL 5718440, at *6 (N.D. Cal. Oct. 21, 2013) (reducing the incentive award to $2,000

7  where the class representatives did not demonstrate great risk to finances or reputation in bringing

8  the class action). In reducing the award, courts have noted that overcompensation of class

9  representatives could encourage collusion at the settlement stage of class actions by causing a

10  divergence between the interests of the named plaintiff and the absent class members, destroying

11  the adequacy of class representatives. *See Staton*, 327 F.3d at 977–78; *see also Radcliffe*, 715

12  F.3d at 1165.

13      Here, the settlement agreement provides for a maximum class representative payment of

14  $5,000. (ECF No. 37-2 at 13). Plaintiff's counsel declared that Plaintiff researched and identified

15  counsel, provided information to counsel, having "several meetings and telephone conferences"

16  with the attorneys, reviewing case documents, and being deposed. (ECF No. 37-1 ¶ 82). In

17  addition, Plaintiff notes he took a serious reputational risk by suing his former employer. (ECF

18  No. 37-1 ¶ 83).[8] The payment represents 1.33% of the gross settlement amount, or 2.45% of the

19  amount expected to go to class members.

20      The Court cautions that it cannot completely evaluate whether this amount is excessive as

21  it does not know exactly how much work Plaintiff had to do. The Court finds the proposed award

22  suffices for preliminary approval purposes. At the final approval hearing, however, the court will

23  review Plaintiff's evidence that the requested incentive award is warranted here, including

24  evidence of the specific amount of time Plaintiff spent on the litigation, the particular risks and

25  burdens carried by Plaintiff as a result of the litigation, and the particular benefit that Plaintiff

---

26  [8] Plaintiff argues he might have been liable for Defendant's costs if he lost at trial. He cites to *Koehl v. Verio*, 142

27  Cal. App. 4th 1313 (2006) for this proposition. Although the court there affirmed an attorneys' fee award to the
defendants, the court expressly noted that the plaintiff did not properly argue it. *Id.* at 1328 n.6 ("[N]owhere in their
opening or reply briefs do Appellants make any argument as to the award of attorneys' fees."). Given the inadequate

28  case law Plaintiff cites, the Court will not include this factor in its analysis.

1  provided to counsel and the class as a whole throughout the litigation. *See Goodwin v. Winn*

2  *Mgmt. Grp. LLC*, No. 1:15-cv-00606-DAD-EPG, 2017 WL 3173006, at *12 (E.D. Cal. July 26,

3  2017) (citing *Bautista v. Harvest Mgmt. Sub LLC*, No. CV 12-10004 FMO (CWx), 2013 WL

4  12125768, at *15 (C.D. Cal. Oct. 16, 2013)).

5        **E.**      **Appointment of Settlement Administrator**

6        The parties agreed to use third-party settlement administrator ILYM Group, Inc., which

7  submitted a $10,441.45 bid. According to Plaintiff's counsel, "ILYM Group, Inc. has significant

8  experience in the administration of class action settlements and is qualified to perform all of the

9  duties required of it in the Settlement." (ECF No. 37-1 ¶ 70). The Court finds ILYM Group is an

10  appropriate settlement administrator.

11        **F.**      **Notice Procedures**

12        For proposed settlements under Rule 23, "the court must direct notice in a reasonable

13  manner to all class members who would be bound by the proposal." Fed. R. Civ. P. 23(e)(1); *see*

14  *also Hanlon*, 150 F.3d at 1025 ("Adequate notice is critical to court approval of a class settlement

15  under Rule 23(e)."). A class action settlement notice "is satisfactory if it generally describes the

16  terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate

17  and to come forward and be heard." *Churchill Vill., LLC v. Gen. Elec.*, 561 F.3d 566, 575 (9th

18  Cir. 2004) (internal quotations and citations omitted).

19            1.      <u>Proposed Notice</u>

20        The Court believes several small modifications should be made to the notice, as follows:

21        First, one page appears to contain track changes. (ECF No. 37-2, at 25). That should be

22  changed.

23        Second, the Court's policy is to permit anyone to attend a final approval hearing and

24  object to the settlement. The Court will consider such objections but might find that they were

25  waived if not timely submitted in writing. The notice should state that.

26        Third, the notice uses several terms without defining them. The notice should clearly

27  define, in plain language, the following terms: "Plaintiff," "Class Members," and "Individual

28  Settlement Payment."

Fourth, the notice should make clear that Defendant will pay any required payroll taxes.

Fifth, the notice should include a clearer mechanism to permit a class member to opt out. The instructions alert class members that they may opt out "by completing, signing, and mailing a letter indicating that they do not want to participate in the settlement" to ILYM at a certain address. A recipient might not know what it takes to complete a letter indicating they do not want to participate in the settlement. Including standard opt-out language in the notice would reduce that concern. Moreover, the notice should contain an email address to which class members may send their opt-out notifications.

Sixth, the notice should be clearer about how to object. The current settlement agreement requires notices of objection to be sent by mail and include five pieces of specified information (full name, dates of employment, last four digits of their Social Security number, the basis, and whether they intend to appear at the final hearing). Additionally, the Court does not see a purpose behind requiring a social security number in order to object. The Court recommends removing this requirement.

In all other respects, the form of the notice is acceptable. The Court notes that it will be translated into Spanish. The Court recommends that the parties file a revised proposed notice that is consistent with this order within fourteen days of the Court's order concerning these findings and recommendations.

### 2.     Notice Procedure

The current plan is as follows:

Once ILYM Group receives the class data (defined as class members' names, last known mailing address and phone number, Social Security numbers, and compensable workweeks) from the Defendant,[9] ILYM will search a change-of-address database to update and correct any changes to class members' addresses.  Within fourteen days of receiving the class data, ILYM Group will mail copies of the notice to all class members via regular First-Class U.S. Mail. ILYM

---

[9] There does not appear to be a specific requirement for Defendant to provide the class data to ILYM. However, the Court notes that section 51 of the settlement agreement might require Defendant to provide the data. (ECF No. 37-2, at 16) ("The Parties and their counsel will cooperate with each other and use their best efforts to effect the implementation of the Settlement.").

Group will exercise its best judgment to determine the current mailing addresses. (ECF No. 37-2, at 2, 7-8).

If a notice is returned as undeliverable, then it will either be re-mailed to a forwarding address if provided. If none is provided, then ILYM Group will use skip-tracing or another search method to find the member's mailing address. It appears that if ILYM Group cannot find the correct address, then the class member will not be able to object or opt-out. (And, perhaps, not receive a payment.) (ECF No. 37-2, at 8).

The deadline for class members to object or opt out is 60 days after ILYM Group sends notices to the class members. (ECF No. 37-2, at 5). Settlement class members who received a re-mailed notice will have an extra fifteen days. (*Id.* at 9).

As discussed above, objections must be received in writing and contain five specified pieces of information.

The Court has the following recommendations for an improved procedure.

First, the Court is concerned that some class members might not have stable addresses. ILYM should use other means of connecting with class members. The class data already includes class members' last-known phone numbers, so there could be automated calls or text messages (to the extent the numbers are cell phones).

Second, as discussed *supra*, the process for opting out and for objecting should be easier. There should be an email address to which class members can send their objections or opt-out notices.

Finally, as also discussed *supra*, the notice procedure should align with the Court's policy for receiving objections at the final approval hearing.

### IV.  CONCLUSION AND ORDER

Based on the foregoing, IT IS HEREBY RECOMMENDED:

1.     The proposed class be conditionally certified under Rule 23(c)(1), for purposes of settlement only, as the proposed class satisfies the requirements of Rule 23(a) as well as the requirements for certification under one of the subsections of Rule 23(b), including that:

a.   The class is so numerous that joinder of all members is impracticable;

b.   There are questions of law and fact common to the class;

c.   The claims or defenses of the representative party are typical of the claims or defenses of the class; and

d.   The representative party will fairly and adequately protect the interests of the class.

2.   The following persons be preliminarily certified as Class Members solely for the purpose of entering a settlement in this matter:

all who are employed or have been employed by Defendant, in the State of California, and who have worked one or more shifts as a non-exempt hourly agricultural employee, as defined by the California Labor Code, Industrial Welfare Commission Wage Order 8-2001, and 29 U.S.C. §1892(3) from April 13, 2014 through April 30, 2019.

3.   The Settlement Agreement (ECF No. 37-2) be granted preliminary approval as it falls within the range of possible approval as fair, adequate, and reasonable, and appears to be the product of arm's length and informed negotiations and to treat all Class Members fairly, subject to the following recommendations:

a.   The settlement administrator take additional actions to locate class members, as discussed in this order.

b.   All terms in the settlement agreement and notice be harmonized with each other to the extent the Court order any changes to either.

c.   The recipient(s) of unclaimed funds be determined only after the funds are initially distributed.

4.   A final approval hearing on the question of whether the settlement, attorneys' fees and costs to class counsel, and the class representative service payment should be finally approved as fair, reasonable, and adequate be held as set forth below.

5.   The form and content of the Notice of Class Action Settlement (ECF No. 37-2, at 21-26), be approved conditioned on the settling parties making the following modifications to the notice:

a.   Revise the objection provision of the notice of class action settlement to

28

include an explanation that a class member may raise objections at the final approval hearing, but that the Court retains discretion to decline to consider any objection that has not been timely submitted in writing.

    b. Include suggested language to advise class members how to opt out and include all relevant objection requirements.

    c. Include an email address to receive opt-outs and objections.

    d. Remove track changes.

6.    The procedures for class members to be notified of, participate in, opt-out of, and object to the settlement, as set forth in the Settlement (ECF No. 37-2 at 8-10), be approved as the best practicable under the circumstances and constitution sufficient due notice to the class members, conditioned on the settling parties making the following modifications:

    a. The settling parties change the content of the notice consistent with the above.

    b. ILYM Group use additional means of connecting with class members, such as phone calls, text messages, or a combination thereof, with instructions for updating their addresses.

    c. Remove unnecessary requirements for opting out, including Social Security numbers.

7.    The settling parties be directed to file a second revised proposed notice and settlement agreement incorporating the above modifications within fourteen (14) days of the district court's order adopting this recommendation.

8.    That class members will receive a settlement share unless they opt out of the settlement sixty (60) days after the notice is sent, except as otherwise set forth in the settlement agreement.

9.    ILYM Group, Inc. be appointed to act as the settlement administrator, under the terms set forth in the settlement agreement.

10.    Jose Urena be appointed as the Class Representative.

11.    Kingsley & Kingsley, APC, be appointed as Class Counsel.

12.    That the notice, (ECF No. 37-2, at 21-26), with the above modifications, be

distributed to class members in accordance with the procedures set forth in the Settlement

Agreement (ECF No. 37-2). Proof of distribution of the notice is to be filed by the parties in

conjunction with the motion for an order granting final approval of the Settlement.

13.     That a final approval hearing be held on at a time to be determined upon approval

of the final notice and settlement agreement in Courtroom 10 (EPG) before Magistrate Judge

Erica P. Grosjean, to determine whether the Settlement should be granted final approval as fair,

reasonable, and adequate as to the class members. The Court will hear all evidence and

argument necessary to evaluate the Settlement, and will consider any request, made by separate

motion, by Plaintiff and class counsel for class representative payments, and for class counsel

fees and expenses payment. Class members and their counsel may support or oppose the

settlement and the motion for awards of class representative payments and class counsel fees

and expenses payment, if they so desire and as set forth in the notice.

14.     That the motion for final approval of class action settlement be filed twenty-eight

(28) days in advance of the final approval hearing, in accordance with Local Rule 230.

15.     That the Court reserves the right to continue the date of the final approval hearing

without further notice to class members. The Court retains jurisdiction to consider all further

applications arising out of or in connection with the Settlement.

16.     That not later than fourteen (14) calendar days after the deadline for objection or

exclusion, Plaintiffs will file a motion for approval of their class counsel's attorneys' fees and

costs. The motion for class counsel attorneys' fees and costs shall be heard concurrently with the

motion for final approval.

These Findings and Recommendations will be submitted to the United States District

Judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(l). Within

fourteen (14) days after being served with these Findings and Recommendations, the parties may

file written objections with the Court. The document should be captioned "Objections to

Magistrate Judge's Findings and Recommendations." The parties are advised that failure to file

objections within the specified time may result in the waiver of the "right to challenge the

magistrate's factual findings" on appeal. *Wilkerson v. Wheeler*, 772 F.3d 834, 839 (9th Cir. 2014)

1    (citing *Baxter v. Sullivan*, 923 F.2d 1391, 1394 (9th Cir. 1991)).

2

3    IT IS SO ORDERED.

4      Dated:   **June 26, 2020**           /s/ *Erica P. Grosjean*

5                                        UNITED STATES MAGISTRATE JUDGE

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28