1

2

3

4

5

6

7

8                          UNITED STATES DISTRICT COURT

9                    FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11 | JOSE URENA, as an individual, on behalf        No.  1:18-cv-00517-NONE-EPG
    of himself and others similarly situated,

12                                              AMENDED FINDINGS AND
                    Plaintiff,                  RECOMMENDATIONS, RECOMMENDING

13                                              THAT PLAINTIFF'S MOTION FOR FINAL
            v.                                  APPROVAL OF CLASS ACTION

14                                              SETTLEMENT BE GRANTED AND
    CENTRAL CALIFORNIA ALMOND                   MOTION FOR ATTORNEYS' FEES AND

15  GROWERS ASSN.,                              COSTS, AS MODIFIED HEREIN

16                  Defendant.                  (ECF Nos. 52 & 52-1)

17                                              FOURTEEN-DAY DEADLINE

18

19            Plaintiff Jose Urena, on behalf of himself and others similarly situated ("Plaintiff"), filed

20   the complaint commencing this class-action lawsuit on April 13, 2018. (ECF No. 18). On August

21   11, 2020, the Court adopted the undersigned's findings and recommendations and granted

22   preliminary approval to a proposed class-action settlement, as modified. (ECF No. 47). The Court

23   approved the parties' revised class-action notice on September 16, 2020, (ECF No. 51), and

24   Plaintiff filed a motion for final approval of the settlement agreement on January 8, 2021, (ECF

25   No. 52), and a motion for attorneys' fees and costs concurrently therewith, (ECF No. 52-1). The

26   Court held a hearing on February 5, 2021. On February 10, 2021, Plaintiff Urena filed a

27   supplemental declaration concerning the amount of time he spent on this action. (ECF No. 55).

28   On February 18, 2021, Plaintiff's counsel Kelsey M. Szamet ("counsel") filed a supplemental

declaration concerning reimbursement of costs. On March 12, 2021, the court entered findings and recommendations, recommending that plaintiff's motion be granted. (ECF No. 57). On June 14, 2021, the Court vacated the findings and recommendations and requested further briefing in light of *Briseno v. Henderson*, ___ F.3d ____, 2021WL 2197968 (9th Cir. June 1, 2021). (ECF No. 58). Counsel filed another supplemental declaration concerning the matter on June 17, 2021. (ECF No. 59).

For the following reasons, the Court recommends granting final approval of the class-action settlement and the motion for attorneys' fees and costs, as modified herein.

## I. BACKGROUND

This action proceeds on Plaintiff's first amended complaint, filed on August 13, 2018. Plaintiff brought nine claims. (ECF No. 15). Plaintiff alleged violations of laws concerning meal and rest periods; unpaid wages; unfair, unlawful and fraudulent business practice; and claims derivative of the foregoing.

### A. Proposed Settlement

The parties filed a notice of settlement on November 4, 2019. (ECF No. 33). Plaintiff filed a motion for preliminary approval of the settlement on April 3, 2020. (ECF No. 37). That settlement agreement has been amended following various court orders. (ECF Nos. 47-50, 52-3). The Court now describes the basic background for the settlement and its current terms.

#### 1. Background of Reaching Settlement

The parties engaged in discovery before reaching the settlement. (ECF No. 52-2 at 3). After two rounds of mediation by a retired California judge, the parties entered into a settlement agreement. (*Id.* at 3-4). The agreement was modified twice during the preliminary approval process. (ECF Nos. 47-50).

#### 2. The Court's Initial Concerns

First, Plaintiff stated in his motion for preliminary approval that the maximum possible settlement amount was $29,511,809, of which $24,668,810 were penalties. (ECF No. 37-1 at 10). Plaintiff argued this was proper due to weaknesses in his case. (ECF No. 37 at 23-29). At the preliminary approval hearing, counsel argued that Plaintiff's deposition weakened his case. The

Court ordered the parties to file additional information concerning his deposition, (ECF No. 40), which Plaintiff subsequently did, (ECF No. 41). In its findings and recommendations, the Court found that preliminary approval of the $375,000 fund—which amounts to 1.266% of the stated maximum recovery amount—was appropriate but "Counsel may wish to garner additional support for this substantial discount at final approval." (ECF No. 46 at 16). The district judge's order adopting the findings and recommendations highlighted this concern. (ECF No. 47 at 2).

Second, at preliminary approval, Plaintiff sought of up to $125,000 of attorney's fees, which amounts to 33-⅓% of the total settlement fund. The findings and recommendations noted that the amount was above the 25% benchmark in the Ninth Circuit and, accordingly, counsel should expect to justify the fee award at the final approval hearing. (ECF No. 46 at 22-23). The district judge's order adopting the findings and recommendations endorsed these concerns. (ECF No. 47 at 2).

Third, the Court noted that the proposed *cy pres* recipient, Court Appointed Special Advocates (CASA) of Fresno and Madera Counties, (ECF No. 37-2 at 11), appeared not to meet the relevant standards for *cy pres* recipients due to the lack of connection between Plaintiff's claims and the recipient and that it was premature to determine a *cy pres* recipient. (ECF No. 46 at 19-20). The district judge's order adopting indicated that the recipient should "be determined only after the funds are initially distributed." (ECF No. 47 at 3).

Fourth, after an initial review of the motion for final approval, the Court also ordered counsel to explain certain of its stated costs, noting that some of the explanations provided did not appear to meet various legal standards. (ECF No. 53). Counsel filed a supplemental declaration on that point. (ECF No. 56).

Finally, at the hearing, the Court granted Plaintiff leave to file a declaration in support of the request for a $5,000 enhancement to Plaintiff for his work on this case. (*See also* ECF No. 54) (minute order concerning the same). Plaintiff filed such a declaration, stating he worked for 25-35 hours on this matter. (ECF No. 55).

3.    <u>Settlement Terms</u>

a)    *Class*

The settlement class includes "all who are employed or have been employed by Defendant, in the State of California, and who have worked one or more shifts as a nonexempt hourly agricultural employee, as defined by the California Labor Code, Industrial Welfare Commission Wage Order 8-2001, and 29 U.S.C. §1892(3) from April 13, 2014 through April 30, 2019." (ECF No. 52-3 at 5).

b)    *Payments*

The agreement creates a $375,000 common fund, with the proposed following payments:

<u>Maximum Settlement Fund</u>: $ 375,000.00
Class Representative Enhancements: $ 5,000.00
Class Counsel's Fees: $ 125,000.00
Class Counsel's Costs: $16,542.51
Private Attorney General Act ("PAGA") Payment: $11,250 (75% of $15,000)
Settlement Administration Costs: $10,441.45
*Net Settlement Amount*: $206,766.04

(ECF No. 52-14 at 5) (proposed order); (*see also* ECF Nos. 52-3 at 13 (proposed settlement agreement, which does not contain counsel's final costs); 56 at 2 (declaration of counsel, revising counsel's costs)).

c)    *Release*

The settlement agreement releases Released Claims for the Class Period (April 13, 2014 through April 30, 2019). (ECF No. 52-3 at 2, 7). Released Claims has a broad definition:

"Released Claims" means any and all claims, debts, liabilities, demands, obligations, penalties, guarantees, costs, expenses, damages, action or causes of action of whatever kind or nature, contingent or accrued, that are alleged in the Action or that reasonable could have arisen out of the same facts alleged in the Action, including, but not limited to, all claims related to the Migrant and Seasonal Agricultural Worker Protection Act. This Release shall include, without limitation, claims that were raised, or that reasonably could have been raised, under the applicable Wage Order 8-2001 and California Labor Code provisions, including Labor Code §§203, 226.7, 510, 512, 1194, and 1194.2 (collectively, the "Released Claims"). The period of the Released Claims shall extend through the Class Period. The Parties agree that the judgment, and release of claims provided herein, shall have *res judicata* effect. The definition of Released Claims shall not

4

be limited in any way by the possibility that Plaintiff or Class Members may discover new legal theories or legal arguments, based on the facts alleged in the Action, and not alleged in the operative pleadings in the Action but which might serve as an alternative basis for pursuing the same claims, causes of action, or legal theories of relief falling within the definition of Released Claims.

(ECF No. 52-3 at 4-5).

### 4. Motion for Final Approval and Supplemental Briefing

The Court highlights several aspects of the motion for final approval and the supplemental briefing thereto.

First, the settlement administrator filed a declaration stating that 310 (or perhaps 311) notice packages were mailed to the class members. After various skip-tracing efforts, only 19 were determined to be undeliverable. (ECF No. 52 at 3). The administrator also declared that if the Court approves the various costs, the average class member will receive a $656.94 settlement. (*Id.* at 345). This number appears to be incorrect as it assumes that class counsel will receive $19,000 in litigation costs, which is the maximum amount class counsel can request in the proposed settlement agreement. At final approval, they now request $16,542.51. (ECF No. 56). Accordingly, if the Court grants the motion in full, the average class member should receive $664.84.

Second, no class members have opted out. (ECF No. 52-10 at 4). One class member sent the settlement administrator an objection via email, which the settlement administrator describes as deficient. (*Id.*). The objection reads, in relevant part, as follows: "My name is Albertico Camacho Jr. I object with the proposed settlement. I was affected not only financially but physically. I had to visit my doctor and the emergency room numerous times due to the long hours without the proper rest and breaks. The long hours took a toll on my body and had many health issues afterwards." (ECF No. 52-12 at 2) The settlement administrator attempted to reach the objector but received no response. (ECF No. 52-10 at 4). At the hearing, counsel represented that her firm also attempted to reach the objector by mail and by calling the objector at the number in their records but had not received a response.

///

Third, since the hearing, Plaintiff submitted three additional declarations. The first was from Plaintiff, who estimated he spent 25-35 hours in connection with this matter. (ECF No. 55). The second was from counsel, which provided additional information concerning counsel's costs. (ECF No. 56). The third was also from counsel, which concerned the agreements needed to be identified under Federal Rule of Civil Procedure 23(e)(3).

## II.  LEGAL STANDARD FOR CLASS CERTIFICATION AND SETTLEMENT

"A difficult balancing act almost always confronts a district court tasked with approving a class action settlement." *Allen v. Bedolla*, 787 F.3d 1218, 1223 (9th Cir. 2015). "On the one hand, . . . 'there is a strong judicial policy that favors settlements, particularly where complex class action litigation is concerned.'" *Id.* (citations omitted). "But on the other hand, settlement class actions present unique due process concerns for absent class members, and the district court has a fiduciary duty to look after the interests of those absent class members." *Id.* (citations and internal quotation marks omitted).

"To guard against this potential for class action abuse, Rule 23(e) of the Federal Rules of Civil Procedure requires court approval of all class action settlements, which may be granted only after a fairness hearing and a determination that the settlement taken as a whole is fair, reasonable, and adequate." *In re Bluetooth Headset Prod. Liab. Litig*., 654 F.3d 935, 946 (9th Cir. 2011) (footnote added); *Staton v. Boeing Co.*, 327 F.3d 938, 972 n.22 (9th Cir. 2003) (court's role is to police the "inherent tensions among class representation, defendant's interests in minimizing the cost of the total settlement package, and class counsel's interest in fees").

Rule 23(e)'s class settlement process generally proceeds in two phases. In the first phase, the court conditionally certifies the class, conducts a preliminary determination of the fairness of the settlement (subject to a more stringent final review), and approves the notice to be provided to the class. *Ontiveros v. Zamora*, 303 F.R.D. 356, 363 (E.D. Cal. 2014). The purpose of the initial review is to ensure that an appropriate class exists and that the agreement is non-collusive, without obvious deficiencies, and within the range of possible approval as to that class. *See True v. Am. Honda Motor Co*., 749 F. Supp. 2d 1052, 1062 (C.D. Cal. 2010); Newberg on Class Actions § 13:13 (5th ed. 2014).

In the second phase, the court holds a full fairness hearing where class members may present objections to class certification, or the fairness of the settlement agreement. *Ontiveros*, 303 F.R.D. at 363 (citing *Diaz v. Trust Territory of Pac. Islands*, 876 F.2d 1401, 1408 (9th Cir. 1989)). Following the fairness hearing, the court is to consider all of the information before it and confirm that class certification is appropriate, and that the settlement is fair, reasonable, and adequate. *See Valdez v. Neil Jones Food Co*., 2015 WL 6697926, at * 8 (E.D. Cal. Nov. 2, 2015); *Miller v. CEVA Logistics USA, Inc.*, 2015 WL 4730176, at *3 (E.D. Cal. Aug. 10, 2015). "Any class member may object to the proposal if it requires court approval under this subdivision (e). The objection must . . . state with specificity the grounds for the objection." Fed. R. Civ. P. 23(e)(5)(A).

## III.    DISCUSSION

Here, the first phase of the Rule 23(e) class settlement process—the conditional approval of the class, the preliminary approval of the Settlement, and the approval of the notice to be provided to the class members—has been completed. (ECF Nos. 47, 51). The parties are now before the Court for the second phase of the Rule 23(e) class settlement process: (1) final class certification and (2) final approval of the Settlement. (*See* ECF No. 52).

### A.    Final Class Certification

In this Court's findings and recommendations (ECF No. 46), adopted in full by the district judge, (ECF No. 47), the Court made a preliminary finding that the proposed settlement class satisfies the requirements of Federal Rule of Civil Procedure 23(a) for purposes of settlement. The Court also made a preliminary finding that the proposed settlement class met the predominance and superiority requirements of Federal Rule of Civil Procedure 23(b)(3), which provides: "A class action may be maintained if Rule 23(a) is satisfied and if . . . the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Thus, the class was conditionally certified under Federal Rule of Civil Procedure 23(c)(1), for the purposes of settlement only. (ECF Nos. 46 at 6-12; 47 at 2-3.) There is no indication that the Court's preliminary determination that the

proposed settlement class satisfies the requirements for class certification was in error.

Thus, for the reasons set forth in this Court's findings and recommendations recommending conditional class certification (ECF No. 46 at 6-12), and in the district judge's order adopting in full those findings and recommendations, (ECF No. 47 at 2-3), the Court finds the requirements for final class certification under Federal Rule of Civil Procedure 23(a) and (b) to be satisfied. The Court therefore recommends certifying the following class, for settlement purposes only:

> all who are employed or have been employed by Defendant, in the State of California, and who have worked one or more shifts as a nonexempt hourly agricultural employee, as defined by the California Labor Code, Industrial Welfare Commission Wage Order 8-2001, and 29 U.S.C. §1892(3) from April 13, 2014 through April 30, 2019.

**B.** **Final Approval of the Proposed Settlement Under Rule 23(e)**

1. <u>Rule 23(e)(1): Adequacy of Notice</u>

Under Rule 23(e)(1), the parties must provide notice to the class. "The court must direct notice in a reasonable manner to all class members who would be bound by the proposal . . . ." Fed. R. Civ. P. 23(e)(1)(B). "Notice is satisfactory if it 'generally describes the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard.' " *Churchill Vill., L.L.C. v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004) (quoting *Mendoza v. Tucson Sch. Dist. No. 1*, 623 F.2d 1338, 1352 (9th Cir. 1980)). Any notice of the settlement sent to the class should alert class members of "the opportunity to opt-out and individually pursue any state law remedies that might provide a better opportunity for recovery." *Hanlon*, 150 F.3d at 1025.

Here, the Court already reviewed and approved the contents of the notice. (ECF Nos. 47-51) (order granting preliminary approval to proposed settlement conditioned, in part, on revised notice; counsel's declaration containing revised notice; order requiring further revisions; counsel's additional declaration containing revisions to notice; order setting final approval hearing upon review of the final revisions). It was done in a reasonable manner, and the parties made several modifications to their proposed notice in response to the Court's orders. (*See id.*)

The settlement administrator initially mailed 310 copies of the notice. Defendant located one more class member, and the settlement administrator mailed a 311th copy. After performing skip-traces and remailing settlement packets, the settlement administrator determined 19—amounting to 6.1% of the class members—were undeliverable.  (ECF No. 52-10 at 2-3).

The Court recognizes that the settlement amount is not particularly large, so further steps to find 19 class members might be prohibitively expensive. Moreover, this action was filed in part under the Migrant and Seasonal Agricultural Worker Protection Act, which indicates that some of the employees in the class may no longer live in the area. Thus, the Court concludes adequate notice was provided to the class here. *See Silber v. Mabon*, 18 F.3d 1449, 1453–54 (9th Cir. 1994) (court need not ensure all class members receive actual notice, only that "best practicable notice" is given); *Winans v. Emeritus Corp.*, No. 13-cv-03962-HSG, 2016 WL 107574, at *3 (N.D. Cal. Jan. 11, 2016) ("While Rule 23 requires that 'reasonable effort' be made to reach all class members, it does not require that each individual actually receive notice."). The Court accepts the reports of the settlement administrator and finds sufficient notice has been provided satisfying Federal Rule of Civil Procedure 23(e)(1).

### 2.     Rule 23(e)(2): Fair, Reasonable and Adequate

To be approved, a class-action "settlement must be 'fair, reasonable, and adequate.'" *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 963 (9th Cir. 2009) (quoting Fed. R. Civ. P. 23(e)(2)). To make that determination, a court must consider whether:

> (A) the class representatives and class counsel have adequately represented the class;
> (B) the proposal was negotiated at arm's length;
> (C) the relief provided for the class is adequate, taking into account:
>> (i) the costs, risks, and delay of trial and appeal;
>> (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;
>> (iii) the terms of any proposed award of attorney's fees, including timing of payment; and
>> (iv) any agreement required to be identified under Rule 23(e)(3); and
> (D) the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2).

*///*

*a)      Adequate Representation*

The class representatives and counsel have adequately represented the class.  The Court already determined in its earlier findings and recommendations at preliminary approval that Plaintiff adequately represented the class and that class counsel adequately represents the class. (ECF No. 46 at 9-10).  The same rationales apply here.  Indeed, both Plaintiff and counsel have filed several rounds of subsequent briefing in response to the Court's orders.  (ECF Nos. 48, 50, 55-56, 58).  Counsel averred there are no conflicts of interest between Plaintiff or counsel and the proposed class.  (ECF No. 52-2 ¶ 78).  The Court continues to find that Plaintiff and his counsel are adequate.

*b)      Negotiations at Arms' Length*

In its findings and recommendations regarding preliminary approval, the Court found that the parties negotiated their agreement at arms' length and noted that they went through several rounds of mediation. (ECF No. 46 at 16-17). The Court continues to find that this factor favors approval.

*c)      Adequacy of Relief*

The Court must also consider the adequacy of the relief, considering the costs, risks and delay of trial and appeal; the effectiveness of distributing relief and processing class-member claims; the terms of any proposed award of attorneys' fees; and any other agreements made in connection with the proposal.  Fed. R. Civ. P. 23(e)(2)(C).  The Court finds that these factors favor approval.

In considering the amount offered in the settlement, "[t]he proposed settlement is not to be judged against a hypothetical or speculative measure of what might have been achieved by the negotiators. . . . [T]he very essence of a settlement is compromise, a yielding of absolutes and an abandoning of highest hopes." *Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1242 (9th Cir. 1998) (internal quotation marks and citation omitted). Instead, the Ninth Circuit (and district courts in it) have "long deferred to the private consensual decision of the parties." *Rodriguez*, 563 F.3d at 965. As the Ninth Circuit explained in *Rodriguez*:

///

> the court's intrusion upon what is otherwise a private consensual agreement
> negotiated between the parties to a lawsuit must be limited to the extent necessary
> to reach a reasoned judgment that the agreement is not the product of fraud or
> overreaching by, or collusion between, the negotiating parties, and that the
> settlement, taken as a whole, is fair, reasonable and adequate to all concerned.

*Id.*

The $375,000 settlement amount is just shy of 1.3% of the maximum possible recovery of $29,611,809. Plaintiff argues that the substantial discount is warranted given the weaknesses in his case, the views of experienced counsel, and the presence of a mediator to conduct arms-length negotiations. (ECF No. 52 at 23-27). Additionally, "[t]here is no evidence of fraud, overreaching, or collusion." *Rodriguez*, 563 F.3d at 965. Moreover, the payment "is in cash, not in kind, which is a good indicator of a beneficial settlement." *Id.* Furthermore, the parties attended mediation. Moreover, the individual payment to the class members is material. As described above, the average each class member will receive is above $650. This is a material payment that represents a real and non-negligible benefit to each class member.

<blockquote>i.     The Costs, Risks and Delay of Trial and Appeal</blockquote>

"[T]here is a strong judicial policy that favors settlements, particularly where complex class action litigation is concerned." *In re Syncor ERISA Litig.*, 516 F.3d 1095, 1101 (9th Cir. 2008). As a result, "[a]pproval of settlement is preferable to lengthy and expensive litigation with uncertain results." *Johnson v. Shaffer*, No. 2:12–cv–1059 KJM AC P, 2016 WL 3027744, at *4 (E.D. Cal. May 27, 2016) (citing *Morales v. Stevco, Inc.*, 2011 WL 5511767, at *10 (E.D. Cal. Nov. 10, 2011).

The weaknesses noted in the since-vacated findings and recommendations remain the same. (*See* ECF No. 57 at 9-15). It appears that Plaintiff encountered factual challenges to the case that justified a relatively low settlement in relation to the maximum total recovery, including that Plaintiff's deposition testimony appeared to contradict his allegations. There are corresponding weaknesses in Plaintiff's derivative claims. Moreover, *Naranjo v. Spectrum Security Services* is a substantial legal risk. 40 Cal. App. 5th 444 (2019), *as modified on denial of reh'g* (Oct. 10, 2019), *review granted*, (Jan. 2, 2020).

ii.     Effectiveness of Distribution

The proposed method of distribution appears to be effective.  The parties have retained a settlement administrator, which has gathered the class members' addresses.  Only 19 of the 311 notice packets were undeliverable.  (ECF No. 52-10 ¶¶ 8, 11 (settlement administrator's declaration)).  The settlement administrator will issue and mail checks upon approval and conduct the necessary tax filing and reporting.  (*Id.* ¶ 16; *see also* ECF No. 52-3 at 11 (procedures set forth in settlement agreement)).  The Court is therefore satisfied that the distribution will be made effectively.

iii.     Terms of Attorney's Fees

As discussed further below, the requested award for attorneys' fees was above the Ninth Circuit's benchmark, but within the range of fees often granted.  For the same reasons that the Court recommends granting attorneys' fees to counsel, the Court also finds that this factor favors the settlement.

iv.     Other Agreements Made in Connection with Settlement

Counsel declares that the other agreements that must be identified under Rule 23(e)(3) comprised (1) a co-counseling agreement among Plaintiff's several attorneys and (2) a standard retainer agreement between Plaintiff and counsel.  (ECF No. 59). This does not indicate any collusion or any unequal treatment among the parties.  Accordingly, the Court finds this factor favors approval of the settlement.

v.     Treating Class Members Equitably

Other than with respect to the representative enhancement, all class members are treated the same.  Their distributions are based on the number of weeks they worked during the class period. (*See* ECF No. 52-3 at 11 (portion of Settlement Agreement concerning calculation of Individual Settlement Payments)).  This is an equitable distribution.  As discussed below, the class representative enhancement as modified is reasonable.

3.     Rule 23(e)(3): Other Agreements

As discussed *supra*, counsel filed a statement concerning agreements required to be identified under Rule 23(e)(3).  (ECF No. 59).  The Court finds no reason to reject the settlement

based on the identified agreements.

### 4. Rule 23(e)(4): New Opportunity to be Excluded

As the class was never certified under Rule 23(b)(3), this factor is not relevant.

### 5. Rule 23(e)(5): Objections

Under Rule 23(e)(5), the Court must also consider class members' objections in determining whether the proposal is fair, reasonable and adequate:

> (A) *In General*. Any class member may object to the proposal if it requires court approval under this subdivision (e). The objection must state whether it applies only to the objector, to a specific subset of the class, or to the entire class, and also state with specificity the grounds for the objection.
>
> (B) *Court Approval Required for Payment in Connection with an Objection*. Unless approved by the court after a hearing, no payment or other consideration may be provided in connection with:
> (i) forgoing or withdrawing an objection, or
> (ii) forgoing, dismissing, or abandoning an appeal from a judgment approving the proposal.

Fed. R. Civ. P. 23(e)(5) (irrelevant subsection (C) excluded).

Camacho was the only objector.[1] Counsel and the settlement administrator attempted to reach Camacho, but both were unsuccessful. The Court will review Camacho's objection even though the settlement administrator indicated that the objection was deficient.[2] *See Hefler v. Wells Fargo & Co.*, 2018 WL 6619983, at *10 n.10 (N.D. Cal. Dec. 18, 2018) (evaluating objections despite their non-compliance with Rule 23(e)'s command to "state with specificity the grounds for the objection" because Rule 23's advisory committee comments note that "a class member who is not represented by counsel may present objections that do not adhere to technical legal standards"), *aff'd sub nom. Hefler v. Pekoc*, 802 F. App'x 285 (9th Cir. 2020) (affirming district court's rejection of objection to attorney fee award).

The objection indicates, without detail or supporting evidence, that class members were not provided with required breaks. Thus, the objection appears to bolster the strength of

---

[1] As above, the objection reads, in relevant part, as follows: "My name is Albertico Camacho Jr. I object with the proposed settlement. I was affected not only financially but physically. I had to visit my doctor and the emergency room numerous times due to the long hours without the proper rest and breaks. The long hours took a toll on my body and had many health issues afterwards." (ECF No. 52-12 at 2)

[2] The settlement administrator did not state why it found the objection deficient.

Plaintiff's case. However, counsel represented at the final approval hearing that they were unable to reach Camacho and that their other investigations—together with various sworn testimony—presented substantial weaknesses to the case. Thus, the Court finds that this unsworn objection does not sufficiently strengthen Plaintiff's case to warrant rejecting the settlement.

### C.    Attorneys' Fees and Costs

Here, Plaintiff seeks attorneys' fees of 33.33% of the gross settlement amount and $16,542.51 for litigation costs. (ECF Nos. 52-1 at 2 (attorneys' fees); 56 at 2 (correcting litigation cost amount)). The Court addresses these requests in turn.

#### 1.    Attorneys' Fees

##### a)    Legal Standards

When a negotiated class action settlement includes an award of attorneys' fees, courts evaluate the fee award in the overall context of the settlement. *Knisley v. Network Assocs.*, 312 F.3d 1123, 1126 (9th Cir. 2002). At the same time, a court "ha[s] an independent obligation to ensure that the award, like the settlement itself, is reasonable, even if the parties have already agreed to an amount." *Bluetooth*, 654 F.3d at 941. Where, as here, fees are to be paid from a common fund, the relationship between the class members and class counsel "turns adversarial." *In re Washington Pub. Power Supply Sys. Sec. Litig.*, 19 F.3d 1291, 1302 (9th Cir. 1994). As a result, the district court must assume a fiduciary role for the class members in evaluating a request for an award of attorney fees from the common fund. *Id.*; *Rodriguez*, 563 F.3d at 968.

The Ninth Circuit has approved two methods for determining attorneys' fees in cases where the attorneys' fee award is taken from the common fund set aside for the entire settlement: the "percentage of the fund" method and the "lodestar" method. *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1047 (9th Cir. 2002) (citation omitted). The district court retains discretion in common fund cases to choose either method. *Id.*; *In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 942 (9th Cir. 2015) (in common-fund class-action case, Ninth Circuit will "review a court's award of fees and costs to class counsel, as well as its method of calculation for abuse of discretion"). "Reasonableness is the goal" under either approach. *Fischel v. Equitable Life Assurance Soc'y of the U.S.*, 307 F.3d 997, 1007 (9th Cir. 2002).

Under the percentage of the fund method, the court may award class counsel a given percentage of the common fund recovered for the class. *In re Online DVD-Rental Antitrust Litig.*, 779 F.3d at 949. In the Ninth Circuit, "the benchmark percentage is 25%." *Id.* "The benchmark percentage should be adjusted, or replaced by a lodestar calculation, when special circumstances indicate that the percentage recovery would be either too small or too large in light of the hours devoted to the case or other relevant factors." *Six (6) Mexican Workers v. Arizona Citrus Growers*, 904 F.2d 1301, 1311 (9th Cir. 1990). Percentage awards of between twenty and thirty percent are common. *See Vizcaino*, 290 F.3d at 1047. Nonetheless, an explanation is necessary when the district court departs from the twenty-five percent benchmark. *Powers v. Eichen*, 229 F.3d 1249, 1256–57 (9th Cir. 2000).

Factors courts may consider when assessing a requested percentage include:

> the extent to which class counsel achieved exceptional results for the class, whether the case was risky for class counsel, whether counsel's performance generated benefits beyond the cash settlement fund, the market rate for the particular field of law (in some circumstances), the burdens class counsel experienced while litigating the case (e.g., cost, duration, foregoing other work), and whether the case was handled on a contingency basis.

*In re Online DVD-Rental Antitrust Litig.*, 779 F.3d at 954–55 (internal quotation marks omitted). The Ninth Circuit has permitted courts to award attorneys' fees using this method "in lieu of the often more time-consuming task of calculating the lodestar." *Bluetooth*, 654 F.3d at 942.

There is a three-step process to apply the percentage-of-the-fund method:

- *First*, the court will ascertain the size of the fund against which the percentage will be taxed.
- *Second*, the court will review the percentage counsel seek, ensuring that the fee resulting from application of that percentage is reasonable.
- *Third*, the court will sometimes undertake a lodestar cross-check, comparing the percentage award to the time counsel expended on the case at the prevailing hourly rates, to further ensure the fee's reasonableness.

5 Newberg on Class Actions § 15:68 (5th ed.); *cf. Vizcaino*, 290 F.3d at 1050-51 (approving use of lodestar cross-check).

In conducting the lodestar cross-check, the court determines the lodestar amount by multiplying a reasonable hourly rate by the number of hours reasonably spent litigating the case.

*See Ferland v. Conrad Credit Corp.*, 244 F.3d 1145, 1149 (9th Cir. 2001). The product of this computation, the "lodestar" amount, yields a presumptively reasonable fee. *Gonzalez v. City of Maywood*, 729 F.3d 1196, 1202 (9th Cir. 2013); *Camacho v. Bridgeport Fin., Inc.*, 523 F.3d 973, 978 (9th Cir. 2008). District Judge Drozd has summarized the standard as follows:

> "Courts in the Ninth Circuit calculate an award of attorney's fees using the lodestar method, whereby a court multiplies the number of hours the prevailing party reasonably expended on the litigation by a reasonable hourly rate." *Telles v. Li*, No. 5:11-CV-01470-LHK, 2013 WL 5199811, at *15 (N.D. Cal. Sept. 16, 2013). "In determining reasonable hours, counsel bears the burden of submitting detailed time records justifying the hours claimed to have been expended." *Chalmers v. City of Los Angeles*, 796 F.2d 1205, 1210 (9th Cir. 1986). "Where the documentation of hours is inadequate, the district court may reduce the award accordingly." *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983). A district court should also exclude from the lodestar fee calculation any hours that were not "reasonably expended," such as hours that are excessive, redundant, or otherwise unnecessary. *See id.* at 434.
>
> In assessing fee applications, the reasonable hourly rates are calculated according to the prevailing market rates in the relevant legal community. *Blum v. Stenson*, 465 U.S. 886, 895 (1984). Typically, the "relevant legal community" is the forum district and the local hourly rates for similar work should normally be employed. *Gonzalez*, 729 F.3d at 1205.

*Tenorio v. Gallardo*, No. 1:16-CV-00283-DAD-JLT, 2019 WL 3842892, at *2 (E.D. Cal. Aug. 15, 2019) (string citations omitted; certain internal quotation marks omitted).

In *Tenorio*, a class-action case brought by farm workers pursuing similar claims as Plaintiff does, the Court found that the relevant legal community was the entire Eastern District of California, not just Fresno. *Id.* at *2 n.1 ("The court recognizes that judges in the Eastern District of California frequently distinguish between the Fresno and Sacramento communities in determining hourly rates. The general rule for awarding attorneys' fee rates, however, is that the rates of attorneys practicing in the forum district are used. . . . This court has located no authority indicating that hourly rates for attorneys in Sacramento may not be used to guide the court's award of such fees in cases originating in Fresno, particularly in specialized fields of litigation." (internal quotation marks and citations omitted)).

*b)* *Application*

Here, the attorney fee request exceeds the 25% benchmark in this circuit. Thus, the Court

looks to see whether there are "special circumstances" to adjust the percentage recovery "in light of the hours devoted to the case or other relevant factors." *Six (6) Mexican Workers*, 804 F.2d at 1311. The Court looks to the following factors:

> the extent to which class counsel achieved exceptional results for the class, whether the case was risky for class counsel, whether counsel's performance generated benefits beyond the cash settlement fund, the market rate for the particular field of law (in some circumstances), the burdens class counsel experienced while litigating the case (e.g., cost, duration, foregoing other work), and whether the case was handled on a contingency basis.

*In re Online DVD-Rental Antitrust Litig.*, 779 F.3d at 954-55.

i.    Exceptional Results

Counsel essentially argues that obtaining any results at all is exceptional. (ECF No. 52-1 at 12) ("Class counsel obtained an excellent result for the Settlement Class in view of the strength of this case, the possible range of recoveries, and the great risks posed in continuing the litigation. . . . Despite these risks, Plaintiff and class counsel recovered $375,000 on behalf of the Settlement Class, that the class members would likely not have recovered independent of this action."). Indeed, Plaintiff's own motion for final approval argues primarily that a very low recovery amount is justified given the challenges of the case. While the Court appreciates that this settlement provides a material benefit to class members, it cannot say that the results are in any way exceptional given the relatively low recovery.

ii.    Risk of Case

It does not appear that there was a high degree of risk at the filing of the case. Although counsel argues it encountered challenges based on Plaintiff's deposition testimony, this is a standard amount of risk in pursuing litigation. Under the circumstances here, the risks do not merit an upward departure.

iii.    Additional Benefits to Class Members

Counsel did not argue this point. However, the Court notes that this lawsuit was filed in April 2018 and Defendant changed its meal and rest policies in July 2018.

iv.    Contingency and Financial Burden

Counsel took this matter on a contingency basis. Counsel's firm has shouldered

$16,542.51 in costs, (ECF No. 56), and anticipates spending between 5 and 20 more hours overseeing the settlement payout procedures, (ECF No. 52-2 at 19).

This case was filed on April 13, 2018. (ECF No. 1). The parties filed a notice of settlement on November 4, 2019—about nineteen months after filing—stating the parties had settled in principle and were working on a long-form settlement agreement. (ECF No. 33). The parties filed their initial settlement agreement on April 3, 2020. (ECF No. 37). This is not an exceedingly long time for a class action to proceed. However, as discussed with the lodestar cross-check below, counsel spent a substantial amount of time on this case compared to the size of the settlement. Thus, the Court finds that the contingency nature and financial burden warrant a slight upward departure from the benchmark.

v.      Other factors

Counsel argues that her firm's skill favors a higher award. (ECF No. 52-1 at 12). At the hearing for final approval, counsel argued that this was not a case where they sought a quick settlement. Rather, counsel extensively litigated this action. Plaintiff filed a complaint and an amended complaint (ECF Nos. 1 & 15), and fully briefed a successful motion to compel, (ECF Nos. 23, 26 & 28). Although Plaintiff's damaging deposition testimony came out on June 12, 2019, (ECF No. 52-8), Plaintiff continued litigating the case, (ECF Nos. 29 (joint scheduling report filed June 20, 2019); 31 (telephonic conference held June 28, 2019)). The parties finally filed a notice of settlement on November 4, 2019—nearly five months after the damaging testimony. (ECF No. 33). This factor is further confirmed by the lodestar cross-check, as explained below.

vi.      Lodestar Cross-Check

Counsel, their year of admission, stated hourly rate, hours billed, and stated total are shown in the chart below:

\\\

\\\

\\\

\\\

| Attorney | Practicing Since | Years of Experience [3] | Stated Rate | Hours Billed | Stated Total |
|---|---|---|---|---|---|
| Eric Kingsley | 1996 | 24 | $825 | 32.7 | $26,977.50 |
| Kelsey Szamet | 2008 | 12 | $585 | 121.8 | $71,253 |
| David Keledjian | 2016 | 4 | $385 | 51.5 | $19,827.50 |
| Justin Aufderhar | 2017[4] | 2 | $325 | 166.6 | $54,145 |
| David Penner | 2018 | 2 | $375 | 16.2 | $6,075 |
| **TOTAL** | | | | | **$178,278** |

Counsel states these hourly rates are "fair and reasonable and are comparable to or less than those charged by my colleagues in California and the national market for prosecuting or defending class actions." (ECF No. 52-2 at 22). As further evidence, they cite to the Laffey Matrix. (*Id.* at 24). District Judge Drozd has rejected use of the Laffey Matrix:

> In seeking these rates, plaintiffs rely upon the Laffey Matrix, "a widely recognized compilation of attorney and paralegal rate data[.]" (Doc. No. 265 at 17.) They then modify the Laffey Matrix and apply it to the Bakersfield market, since this action arose in Bakersfield. (*Id.* at 18.) In opposing this market, defendants assert that this court should apply Fresno rates. (Doc. Nos. 279 at 15; 283 at 16–17.) Both parties miss the mark. As already discussed, the proper rate to be applied is the prevailing rate in the Eastern District of California. *See Tenorio v. Gallardo*, No. 1:16-cv-00283-DAD-JLT, 2019 WL 3842892, at *4 (E.D. Cal. Aug. 15, 2019); *Firstsource Sols. USA, LLC v. Tulare Reg'l Med. Ctr.*, No. 1:15-cv-01136-DAD-EPG, 2019 WL 2725336, at *7–8 (E.D. Cal. July 1, 2019). This court recently awarded rates of $525.00 per hour to an attorney with approximately twenty-five years of experience, *See Tenorio*, 2019 WL 3842892, at *4, and a survey of other recent cases within the Eastern District indicates that this is near the top of the market for hourly rates in this district. *See, e.g.*, *Early v. Keystone Rest. Grp., LLC*, No. 2:16-cv-00740-JAM-DB, 2019 WL 918211, at *5 (E.D. Cal. Feb. 25, 2019) (stating that "the relevant market in this case is the rate prevailing in the Eastern District of California" and approving an hourly rate of $530.00 in an employment discrimination case for an attorney with over 30 years' experience). Because plaintiffs request hourly rates in excess of these rates, some

---

[3] Obtained by subtracting the year the attorney began practicing from 2020. The year 2020 was selected because that was the year the settlement agreement was filed. (ECF No. 37). The exception is Mr. Aufderhar, who left the firm in 2019. (ECF No. 52-2 at 23). His date of admission was subtracted from 2019.

[4] Counsel's declaration states that Mr. Aufderhar received his law degree in 2016 but it does not indicate his year of admission. (ECF No. 52-2 at 23). The website of the State Bar of California indicates that Mr. Aufderhar was admitted on January 12, 2017. *See* http://members.calbar.ca.gov/fal/Licensee/Detail/314023. The Court takes judicial notice of this public record. *See* Fed. R. Evid. 201; *Gerritsen v. Warner Bros. Entm't Inc.*, 112 F. Supp. 3d 1011, 1033 (C.D. Cal. 2015) ("Under Rule 201, the court can take judicial notice of public records and government documents available from reliable sources on the Internet, such as websites run by governmental agencies.").

reduction is warranted.

*C & C Properties v. Shell Pipeline Co.*, No. 1:14-CV-01889-DAD-JLT, 2019 WL 6341047, at *20 (E.D. Cal. Nov. 27, 2019).

Thus, California and national attorneys are not the correct comparison. Instead, the rates used for the lodestar crosscheck should be those in this district. *See Tenorio* 2019 WL 3842892, at *2 & n.1. In *Tenorio*, as relevant here, the court approved the following hourly rates, some of which were modified:

| Year of Admission | Approx. Years of Experience[5] | Hourly Rate Approved |
|---|---|---|
| 1996 | 23 | $525 |
| 2006 | 13 | $375 |
| 2010 | 9 | $300 |
| 2014 | 5 | $250 |

In addition, in a case concerning fees for healthcare-litigation attorneys, the court awarded associates with zero-to-three years' experience $200/hour and four years' experience $300/hour. *Firstsource Sols. USA, LLC v. Tulare Reg'l Med. Ctr.*, No. 1:15-CV-01136-DAD-EPG, 2019 WL 2725336, at *8 (E.D. Cal. July 1, 2019).

Next, the Court must determine the appropriate number of hours for the crosscheck. Counsel did not provide any details concerning the hours worked. This makes it very difficult to determine whether the hours spent were reasonable. A failure to properly document hours can warrant a reduction in the number of hours used in a lodestar:

> " 'Block billing' is 'the time-keeping method by which each lawyer and legal assistant enters the total daily time spent working on a case, rather than itemizing the time expended on specific tasks.' " *Welch v. Metro. Life Ins.*, 480 F.3d 942, 945 n.2 (9th Cir. 2007). A federal court may appropriately impose a "haircut" percentage reduction that is "no greater than 10 percent...based on its exercise of discretion and without a more specific explanation." *Moreno v. City of Sacramento*, 534 F.3d 1106, 1112 (9th Cir. 2008). Block-billing warrants a reduction in the number of hours spent on a matter where, because of the manner of billing, the court cannot ascertain whether such hours could "reasonably be billed to a private client." *Gonzalez*, 729 F.3d at 1202.

*C & C Properties*, 2019 WL 6341047, at *22.

---

[5] Obtained by subtracting the year of admission from 2019, which is when the case was decided.

Here, the billing was not merely block billing, but provided no explanation for the amount. Therefore, the Court will reduce the number of hours billed by 10%.

Thus, the Court finds that the following is an appropriate lodestar crosscheck:

| Attorney | Years of Experience | Stated Rate | Revised Rate | Stated Hours | Revised Hours | Total |
|---|---|---|---|---|---|---|
| Eric Kingsley | 24 | $825 | $525 | 32.7 | 29.43 | $15,450.75 |
| Kelsey Szamet | 12 | $585 | $375 | 121.8 | 109.62 | $41,107.50 |
| David Keledjian | 4 | $385 | $300 | 51.5 | 46.35 | $13,905.00 |
| Justin Aufderhar | 2 | $325 | $250 | 166.6 | 149.94 | $37,485.00 |
| David Penner | 2 | $375 | $250 | 16.2 | 14.58 | $3,645.00 |
| **TOTAL** | | | | | | **$111,593.25** |

Based on the foregoing, the Court finds that the work put in by counsel indicates a small departure from the 25% benchmark is warranted to reflect the substantial work put into the case relative to the relatively small fees associated with such a benchmark. *See Six (6) Mexican Workers*, 904 F.2d at 1311 ("The benchmark percentage should be adjusted, or replaced by a lodestar calculation, when special circumstances indicate that the percentage recovery would be either too small or too large in light of the hours devoted to the case or other relevant factors."). The Court finds that it is reasonable to split the difference between 25 and 33-$\frac{1}{3}$%. Accordingly, the Court recommends awarding fees amounting to 29-$\frac{1}{6}$% of the common fund, or $109,375. This amount is only slightly below the lodestar amount, so reflects a recovery at approximately the reasonable rate for hours expended in the case.

2.     Litigation Expenses

"[A]n attorney who has created a common fund for the benefit of the class is entitled to reimbursement of reasonable litigation expenses from that fund." *Sanchez v. Frito-Lay, Inc.*, 2015 WL 4662636, at *20 (E.D. Cal. Aug. 5, 2015), *report and recommendation adopted*, 2015 WL 5138101 (E.D. Cal. Aug. 26, 2015); *accord Smith v. American Greetings Corp.*, 2016 WL 2909429, *9 (N.D. Cal. May 19, 2016). "These costs can include reimbursements for: (1) meals, hotels, and transportation; (2) photocopies; (3) postage, telephone, and fax; (4) filing fees; (5) messenger and overnight delivery; (6) online legal research; (7) class action notices; (8) experts, consultants, and investigators; and (9) mediation fees." *Carlin v. DairyAmerica, Inc.*, 380

F. Supp. 3d 998, 1023-24 (E.D. Cal. 2019).

Counsel seeks to recover costs for hotels and travel, photocopies, mailing, legal research, reporting services, filing fees, notices, experts, and mediation. Each of these types of expenses is collectable. *Carlin*, 380 F. Supp. 3d at 1023-24. The Court will highlight two of these expenses, which were the subject of counsel's supplemental declaration. (ECF No. 56).

First, counsel seeks $3,335.84 in reimbursement for Westlaw legal research fees. "[R]easonable charges for computerized research may be recovered as attorney's fees . . . if separate billing for such expenses is the prevailing practice in the local community." *Trustees of Const. Indus. & Laborers Health & Welfare Tr. v. Redland Ins. Co.*, 460 F.3d 1253, 1258–59 (9th Cir. 2006); *accord Carlin*, 380 F. Supp. 3d at 1023–24. In response to the Court's order for additional declarations, counsel states that the research fees were calculated by apportioning its Westlaw charges based on the month's usage:

> It is Plaintiff's counsel's usual practice to apportion the costs of its significant Westlaw research subscriptions based on the usage in the month. Accordingly, Westlaw calculates the total a la carte charge for each search and determines its price. The research fee can never exceed that a la carte amount. However, the a la carte charge is typically significantly higher than the actual research fee charged because Westlaw breaks down, on a pro rata basis amongst all of Plaintiff's counsel's cases, all research fees charged by the firm in a month. I believe that such practice is typically the standard industry practice and defense firms routinely pass this charge on to their clients.

(ECF No. 56 at 2). Based on this declaration, the Court finds that these costs are reasonable and that a private client would pay such fees. As such, the Court finds the charges are collectable.

Second, counsel seeks reimbursement for $1,476.30 paid to Econ One, which rendered expert services. "The services provided by Econ One included detailed analysis of time and pay records and the preparation of a damage model for mediation that Plaintiff's Counsel used to assess potential damages in this matter and to aid in settlement negotiations. Plaintiff's counsel required the retention of these expert witness services in order to correctly evaluate the proposed damages for the Class." (ECF No. 56 at 2-3). Given that explanation, the Court finds a fee-paying client would be expected to pay for these services. Thus, the Court recommends reimbursement of the expert expenses.

In sum, the Court finds that counsel seeks reimbursement of only reimbursable, sufficiently documented costs. Thus, the Court recommends permitting the recovery of $16,542.51 in litigation expenses.

### D.     Class Representative Enhancement

A district court may award incentive payments to named plaintiffs in class action cases. *Rodriguez*, 563 F.3d at 958–59. The purpose of incentive awards is to "compensate class representatives for work done on behalf of the class, to make up for financial or reputational risk undertaking in bringing the action, and, sometimes, to recognize their willingness to act as a private attorney general." *Id.* To justify an incentive award, a class representative must present "evidence demonstrating the quality of plaintiff's representative service," such as "substantial efforts taken as class representative to justify the discrepancy between [his] award and those of the unnamed plaintiffs." *Alberto v. GMRI, Inc.*, 252 F.R.D. 652, 669 (E.D. Cal. 2008).  Such incentive awards are particularly appropriate in wage-and-hour actions where a plaintiff undertakes a significant reputational risk in suing her former employer. *Rodriguez*, 563 F.3d at 958-59.

The Ninth Circuit has emphasized, however, that "district courts must be vigilant in scrutinizing all incentive awards." *Radcliffe v. Experian Info. Sols., Inc*., 715 F.3d 1157, 1165 (9th Cir. 2013) (internal quotation marks and citation omitted). In keeping with that admonition, district courts have declined to approve incentive awards that represent an unreasonably high proportion of the overall settlement amount or are disproportionate relative to the recovery of other class members. *See Ontiveros*, 303 F.R.D. at 365-66 (finding an incentive award of $20,000, comprising 1% of the common fund, to be excessive under the circumstances, and reducing the award to $15,000, where class representative spent 271 hours on the litigation and relinquished the opportunity to bring several of his own claims in order to act as class representative); *see also Ko v. Natura Pet Prods., Inc.*, Civ. No. 09–2619 SBA, 2012 WL 3945541, at *15 (N.D. Cal. Sept. 10, 2012) (holding that an incentive award of $20,000, comprising one percent of the approximately $2 million common fund was "excessive under the circumstances" and reducing the award to $5,000); *Wolph v. Acer Am. Corp.*, No. C 09–01314

JSW, 2013 WL 5718440, at *6 (N.D. Cal. Oct. 21, 2013) (reducing the incentive award to $2,000 where the class representatives did not demonstrate great risk to finances or reputation in bringing the class action). In reducing the award, courts have noted that overcompensation of class representatives could encourage collusion at the settlement stage of class actions by causing a divergence between the interests of the named plaintiff and the absent class members, destroying the adequacy of class representatives. *See Staton*, 327 F.3d at 977–78; *see also Radcliffe*, 715 F.3d at 1165.

Here, Plaintiff seeks a $5,000 enhancement. Counsel declares that Plaintiff provided information to counsel; compiled documents; met with his attorneys to discuss the status and theories of liability; responded promptly to counsel's communications regarding settlement; prepared for and attended his deposition; and reviewed settlement documents. (ECF No. 52-2 at 26-27). Plaintiff estimates he spent 25-35 hours on this matter. (ECF No. 55). Thus, the request amounts to an hourly rate between $142 and $200.

Plaintiff argues that he "was at risk for paying for Defendant's legal fees and costs in the event that Defendant prevailed at trial." (ECF No. 52 at 37). The Court rejected this argument in its findings and recommendations:

> Plaintiff argues he might have been liable for Defendant's costs if he lost at trial. He cites to *Koehl v. Verio*, 142 Cal. App. 4th 1313 (2006) for this proposition. Although the court there affirmed an attorneys' fee award to the defendants, the court expressly noted that the plaintiff did not properly argue it. *Id.* at 1328 n.6 ("[N]owhere in their opening or reply briefs do Appellants make any argument as to the award of attorneys' fees."). Given the inadequate case law Plaintiff cites, the Court will not include this factor in its analysis.

(ECF No. 46 at 24 n.8). Here, Plaintiff repeats his argument but provides no further support. Thus, the Court again does not include the factor in its analysis.

The Court finds that a representative enhancement is permissible but that $5,000 is excessive in light of the relatively low recovery for the class. It is approximately eight times larger than the average settlement amount and amounts to a $142 to $200 hourly rate. The Court recommends reducing this payment to $3,000.

**E. Cy Pres Award**

In its findings and recommendations, the Court expressed skepticism that the parties' chosen *cy pres* recipient met the Ninth Circuit's standards but noted that it is premature to select a *cy pres* recipient before the initial distribution of the funds. (ECF No. 46 at 19-20) (citing *Rodriguez*, 563 F.3d at 954 & 966). In the order adopting the findings and recommendations, the Court approved the settlement agreement, subject to the recommendation that "[t]he *cy pres* recipient(s) of unclaimed funds be determined only after the funds are initially distributed." (ECF No. 47 at 3).

At the final approval hearing, Plaintiff appeared to concede that CASA does not meet the standards for being *cy pres* recipient in this action but pointed out that the settlement agreement had not been modified as to this point. The final approval motion offered to provide a waterfall of checks "provided such a distribution makes financial sense considering the administrative fees for the distribution" or to meet and confer with Defendant to select another mutually agreeable non-profit. (ECF No. 52 at 30).

For the same reasons as at the preliminary approval stage, the Court recommends making this determination only after the initial distribution of funds. In addition, in the event funds remain after the initial distribution, the Court recommends ordering the parties to meet and confer to determine whether a waterfall distribution is feasible or whether a new *cy pres* recipient should be named.

**IV. CONCLUSION AND RECOMMENDATIONS**

As a summary, the Court recommends approving the settlement agreement, as modified to have the following payments:

> Maximum Settlement Fund: $ 375,000.00
> Class Representative Enhancements: $ 3,000.00
> Class Counsel's Fees: $ 109,374.00
> Class Counsel's Costs: $16,542.51
> PAGA Payment: $11,250 (75% of $15,000)
> Settlement Administration Costs: $10,441.45
> *Net Settlement Amount*: $224,391.04

For the foregoing reasons, it is HEREBY RECOMMENDED that:

1) Plaintiff's motion for final approval of the Settlement Agreement (ECF No. 52) be

1    GRANTED, as modified;

2    2)  Approval of the settlement class be GRANTED and defined as:

3            all who are employed or have been employed by Defendant, in the State of
             California, and who have worked one or more shifts as a nonexempt
4            hourly agricultural employee, as defined by the California Labor Code,
             Industrial Welfare Commission Wage Order 8-2001, and 29 U.S.C. §
5            1892(3) from April 13, 2014 through April 30, 2019.

6    3)  Plaintiff's request for a class representative enhancement payment be GRANTED, as

7        modified, in the amount of $3,000;

8    4)  Counsel's motion for attorneys' fees (ECF No. 52-1) be GRANTED, as modified, in

9        the amount of $109,375;

10   5)  Counsel's request for costs be GRANTED, in the amount of $16,542.51; and

11   6)  Within ninety days of the initial payments to class members being made, the parties be

12       ordered to file a joint status report concerning (1) the remaining amount in the net

13       settlement; (2) the feasibility of a waterfall payment structure; and (3) alternate

14       proposed *cy pres* recipients.

15       These findings and recommendations will be submitted to the United States district judge

16   assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(l).  Within fourteen

17   (14) days after being served with these findings and recommendations, the parties may file

18   written objections with the Court.  The document should be captioned "Objections to Magistrate

19   Judge's Findings and Recommendations."  The parties are advised that failure to file objections

20   within the specified time may result in the waiver of rights on appeal.  *Wilkerson v. Wheeler*, 772

21   F.3d 834, 838-39 (9th Cir. 2014) (citing *Baxter v. Sullivan*, 923 F.2d 1391, 1394 (9th Cir. 1991)).

22
     IT IS SO ORDERED.
23

24   Dated:   **June 24, 2021**                        /s/ *Erica P. Grosjean*

25                                                    UNITED STATES MAGISTRATE JUDGE

26

27

28